UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* GORDON F.B. ONDIS,<br>Plaintiff,<br><br>v.<br><br>CITY OF WOONSOCKET, RHODE ISLAND; SUSAN D. MENARD, in her individual capacity and in her capacity as Mayor of the City of Woonsocket, Rhode Island; JOEL D. MATHEWS, in his individual capacity and in his capacity as Director of Planning and Community Development of the City of Woonsocket, Rhode Island; PAULETTE MILLER, in her individual capacity and in her capacity as Assistant Director of Planning and Community Development of the City of Woonsocket; OWEN T. BEBEAU, in his individual capacity and in his capacity as Director of Human Services of the City of Woonsocket, Rhode Island; MICHAEL ANNARUMMO, in his individual capacity and in his capacity as Director of Administration and Director of Public Works of the City of Woonsocket, Rhode Island;<br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL NO. 05-10312-MLW |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS</u>**

**I. <u>Introduction</u>**

Defendants City of Woonsocket ("City"), Susan D. Menard, Joel D. Mathews, Paulette Miller, Owen Bebeau, and Michael Annarummo (the "Individual Defendants") have moved, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6), to dismiss all Counts of the *qui tam* Complaint in this action brought by Relator Gordon F.B. Ondis ("Relator"). Relator's Complaint

is a sixty-five-page compilation of disconnected conclusory allegations concerning the City's housing policy, based on a twenty-one page list of alleged excerpts from submissions by the City to the U.S. Department of Housing and Urban Development ("HUD"), that have no connection to how the City actually applies for and spends HUD funds. Hence, as discussed in detail below, every Count of Relator's Complaint, under the federal False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA") (Counts One and Two), and the common law (Counts Three and Four), is fatally deficient as to either subject matter jurisdiction or applicable pleading requirements, and Realtor has provided no basis for personal jurisdiction in this Court as to four of the Defendants.

First, because the Government declined to intervene in this action, Relator lacks standing to bring his common law claims. Second, Relator has provided no basis for liability under the FCA for any of the Individual Defendants in their individual capacities. Third, the Complaint, while lengthy, fails the Fed. R. Civ. P. 9(b) ("Rule 9(b)") requirement of pleading with specificity under the FCA—it fails to allege any specific false claim under the FCA; it fails to allege the basis for the specific FCA liability of each Defendant; and it fails to allege with specificity a conspiracy under the FCA. Fourth, this Court lacks subject matter jurisdiction over Relator's FCA claims because his allegations are based upon public disclosures and he is not an original source. See 31 U.S.C. § 3730(e)(4)(A). Finally, Relator provides no alleged basis for personal jurisdiction over Defendants Mathews, Miller, Bebeau, and Annarummo. Based on these deficiencies, the Court should dismiss Relator's Complaint in its entirety.

## II. Background

The City of Woonsocket, Rhode Island, is a city of approximately 44,000 people located in northern Rhode Island. During the administration of Mayor Susan Menard, the City has had, and continues to have, an active policy of support for affordable housing. The City effects this

policy through a variety of programs, some of which are supported with funds that the City applies for and receives from HUD.

Each of the Individual Defendants is an employee of the City. Defendant Susan Menard serves as Mayor of the City, a position in which she has served for over ten years. Defendant Joel Mathews serves as Director of Planning and Development of the City, and has served in that capacity for twenty-two years. Defendant Paulette Miller serves as Deputy Director of Housing and Community Development for the City, and has served in that capacity for seven years. Defendant Owen Bebeau serves as Director of Human Services for the City, and has served in that capacity for over two years. Defendant Michael Annarummo serves as the Director of Administration and Public Works, and has served in that capacity for ten years. Each of the Individual Defendants also lives in Rhode Island. See Affidavits of Joel Mathews, Paulette Miller, Owen Bebeau, and Michael Annarummo, filed herewith.

Relator filed his *qui tam* Complaint in this action on February 16, 2005, alleging claims under the FCA and common law. See Docket No. 1. As he states in the Complaint, Relator is not a City employee but an owner and provider of three hundred rental units in the City and thus, by his own admission, stands to benefit financially from how the City spends housing funds. See Complaint ¶¶ 8, 120. As such, Relator "does not fit the paradigm of the inside whistleblower" for whom the FCA was intended. United States ex rel. O'Keeffe v. Sverdup Corp., 131 F. Supp. 2d 87, 93 (D. Mass. 2001) (Saris, J.); see id. (distinguishing under FCA between "inside whistleblower" and "gadfly outsider").[1]

---

[1] "Congress enacted the False Claims Act to create an incentive for civic-minded whistleblowers, that is, insiders who put their personal employment or other interests at risk in order to vindicate the pecuniary rights of the United States. At the same time, Congress intended to bar opportunistic persons from abusing the *qui tam* procedure for self aggrandizement." United States ex rel. Alcohol Found., Inc. v. Kalmanovitz Charitable Found., 186 F. Supp. 2d 458, 464-65 (S.D.N.Y. 2002); see also United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 224-25 (1st Cir. 2004) (The FCA has a "long history of repeated congressional efforts to walk a fine line between encouraging whistleblowing and discouraging opportunistic behavior." (citation omitted)); United States ex rel.

In his sixty-five-page Complaint, Relator presents a list of disconnected conclusory allegations, based on a list of alleged excerpts from City submissions to HUD. In addition, Relator transforms a handful of alleged events that occurred over ten years into a secret City policy, and alleges that this secret policy somehow violated the FCA, without connecting these events specifically to the City's submissions to HUD or to a specific false claim. See Complaint ¶¶ 3, 8, 58-132. Relator completely misconstrues the City's housing policy, the City's conduct of that policy, and the events that allegedly evidence the City's secret "true policy." Notably, Relator's allegations are entirely unrelated to the process by which the City actually applies for and receives HUD funding, the details of which do not appear in the Complaint.[2]

The Government reviewed Relator's Complaint, pursuant to 31 U.S.C. § 3730(b)(2) -(4), for approximately eleven months. See Docket Nos. 1, 9. Following this eleven-month review, on January 18, 2006, the United States Attorney declined to intervene in this case. See Docket No. 9. Thus, Relator has elected to proceed with this action, without the Government, pursuant to 31 U.S.C. § 3730(c)(3).

### III. Argument

**A.    The Court should dismiss Counts Three and Four pursuant to Rule 12(b)(1) because Relator has no standing to bring common law claims on behalf of the United States.**

"[T]he FCA does not give relators the right to assert common law claims on behalf of the

---

Hafter D.O. v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1162-63 (10th Cir. 1999) (distinguishing "legitimate qui tam actions" from those brought by "parasitic plaintiffs").

[2] The City makes certain certifications to HUD in its application for funds available through specific HUD programs – Community Development Block Grants (CDBGs), the HOME Investment Partnership Program, and the Emergency Shelter Grant program. See generally 24 CFR § 91.225. The application process is open to public submissions, public comment, and is approved at an open hearing of the City Council. The City's use of all HUD funds is subject to HUD review both prospectively and retrospectively – in the Consolidated (Five-Year) Plan, Annual Action Plans, and Consolidated Annual Performance and Evaluation Reports, reports in which the City and HUD track and review the City's expenditure of every dollar provided through the HUD programs at issue. Based on the City's superb performance administering and managing federal funds and its outstanding overall housing policies, Mayor Menard's administration has received repeated accolades from HUD.

United States." United States ex rel. Walsh v. Eastman Kodak Co., 98 F. Supp. 2d 141, 149 (D. Mass. 2000) (Saris, J.); see also 1 John T. Boese, Civil False Claims and *Qui Tam* Actions, at 2-308 (Aspen 2006) ("[C]ommon law causes of action are not available to *qui tam* relators, who are empowered to sue on behalf of the government through the FCA only."). Consequently, "[a] relator in a *qui tam* FCA action does not have standing to assert common law claims based upon injury sustained by the United States." United States ex rel. Rockefeller v. Westinghouse Elec. Co., 274 F. Supp. 2d 10, 14 (D.D.C. 2003), aff'd, Rockefeller ex rel. United States v. Washington TRU Solutions LLC, No. 037120, 2004 WL 180264 (D.C. Cir. 2004).[3]

Relator has no standing to pursue the common law claims in Counts Three and Four of the Complaint. As noted above, in January 2006 the Government declined to intervene in this action. Without the Government's intervention, Relator's common law claims (Counts Three and Four) should be dismissed for lack of subject matter jurisdiction. See Rockefeller, 274 F. Supp. 2d at 14 (dismissing *qui tam* relator's common law claims pursuant to Fed. R. Crim. P. 12(b)(1) where Government had declined to intervene); see also United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp., 152 F. Supp. 2d 443, 452 (S.D.N.Y. 2001) (same).

**B.     The Court should dismiss Counts One and Two against the Individual Defendants in their individual capacities because Relator has alleged no basis for personal liability.**

"Individual liability under the FCA … cannot be based exclusively on inserting the words 'individual capacity' into the complaint." United States ex rel. Wilson v. Graham County Soil & Water Cons. Dist., 224 F. Supp. 2d 1042, 1049 (W.D.N.C. 2002), vacated on other grounds, 367 F.3d 245 (4th Cir. 2004), rev'd on other grounds, 125 S.Ct. 2444 (2005). Hence, "an employee of a local government unit is not subject to suit under the [FCA] when the employee does not

---

[3] Relator alleges no personal harm in the common law claims in the Complaint. Even if he had, under the provisions allowing for a *qui tam* action, a relator cannot "bring personal claims for common law fraud, unjust enrichment, or other statutes." Boese, supra, at 4-13 to 4-14.

5

personally benefit from the transaction constituting the violation of the Act." United States ex rel. Dunleavy v. County of Delaware, 279 F.3d 219, 221 (3d Cir. 2002), vacated on other grounds, 538 U.S. 918 (2003); see also United States ex rel. Honeywell v. San Fran. Housing Auth., No. C99-1936 TEH, 2001 WL 793300, at *4 (N.D. Cal. 2001).  An employee personally benefited from a false claim when that employee "profited at the public's expense, spent the money at issue for any non-public purpose, or acted in any capacity other than his official one." United States ex rel. Dunleavy v. County of Delaware, No. Civ. A. 94-7000, 2000 WL 1522854, at *9 (E.D. Pa. 2000), aff'd 279 F.3d 219.

Relator makes no allegations that any of the Individual Defendants personally benefited in any way from any of the allegedly false representations at issue.  Certainly, Relator makes no allegations that any of the Individual Defendants sought or achieved any personal monetary benefit, or any benefit outside of his or her official capacity, through representations made to HUD.  Without such allegations, Counts One and Two should be dismissed against each Individual Defendant in his or her individual capacity.  See Dunleavy, 279 F.3d at 221; Honeywell, 2001 WL 793300, at *4.

**C.    The Court should dismiss Counts One and Two because the Complaint lacks the specificity required by Rule 9(b) under the FCA.**

    **1.    Relator has not specifically alleged any false claim, as required under the FCA.**

The Rule 9(b) requirement of pleading with specificity applies to FCA claims.  See United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 228 (1st Cir. 2004). Claims brought under the FCA must "set[] forth the 'who, what, when, where, and how' of the alleged fraud," and claims "based upon speculation or conclusory allegations" are insufficient. Walsh, 98 F. Supp. 2d at 147 (citation omitted).  This requirement "discourage[s] the initiation of suits brought solely for their nuisance value, and safeguards potential defendants from

6

frivolous accusations of moral turpitude." United States ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1256 (D.C. Cir. 2004) (citation omitted).[4]

In addition, "liability under the [FCA] requires a false claim." Karvelas, 360 F.3d at 232; see also United States v. Rivera, 55 F.3d 703, 709 (1st Cir. 1995) (requiring a "claim for payment"); Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005) ("The act of submitting a fraudulent claim to the government is the '*sine qua non* of a False Claims Act violation.'" (citation omitted)). A defendant's "violation of government regulations … does not impose liability under the FCA unless the provider submits false or fraudulent claims to the government for payment based on these wrongful activities." Karvelas, 360 F.3d at 232. A false claim includes "'any request or demand … for money or property' where the government provides or will reimburse any part of the money or property requested." Id. at 225 (quoting 31 U.S.C. § 3729(c)); see also Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 785 (4th Cir. 1999) (FCA "at least requires the presence of a claim—a call upon the government fisc—for liability to attach").

Yet Relator nowhere alleges any specific false claim submitted by the Defendants. Contrary to the requirements of Rule 9(b), Relator provides only a vague and conclusory allegation:

> Defendants have violated 31 U.S.C. § 3729(a)(1-2) of the False Claims Act on multiple occasions on divers dates between January 1, 2000 and the present in that they have willfully and intentionally:
> a) submitted false and/or fraudulent claims for payment to an officer and employee of the United States government; and
> b) made, used or caused to be made or used, a false record or statement which caused a false or fraudulent claim to be paid by the Government.

---

[4] "Rule 9(b) has four purposes: First, the rule ensures that defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of …. Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (citation and quotation omitted).

Complaint ¶ 135.  Relator never identifies the alleged false claim.  Nor does he state the "who, what, when, where, and how" of any of these alleged false claims.  Walsh, 98 F. Supp. 2d at 147; see also Corsello, 428 F.3d at 1014.  Relator never alleges specifically who submitted each false claim, to whom each false claim was submitted, when each false claim was submitted, the monetary amount of each false claim, or what, specifically, renders each claim false.

Instead, Relator buries this fundamental pleading defect under a pile of irrelevant excerpts from the City's submissions to HUD.  Relator lists approximately seventy such excerpts over the course of approximately twenty pages in his Complaint.  See Complaint ¶¶ 49-57 (pages 18-38).  Yet, the excerpted submissions to HUD are not (nor are they alleged to be), themselves, false claims submitted to the government.  See 31 U.S.C. § 3729(c); see also Dookeran v. Mercy Hosp. of Pittsburgh, 281 F.3d 105, 109 (3d Cir. 2002) (application was not a "claim" under FCA because it was not "a request or demand for money," but "was simply the first step in a process that ultimately might have led … to the authorization of the payment of federal funds").  Thus, all of these alleged representations "are inadequate unless they are linked to allegations, *stated with particularity*, *of the actual false claims submitted to the government*."  Karvelas, 360 F.3d at 232 (emphasis added).[5]

In this regard, Relator's Complaint is similar to the complaint in Karvelas, which

---

[5] Relator fails even to make a specific connection between the events that allegedly constitute the City's secret "true policy" and specific representations to HUD.  Relator alleges that the City contravened a number of representations to HUD, and alleges a number of events that allegedly contravened those representations, but makes no connections between the two.  Consequently, Relator makes a number of vague and irrelevant allegations like the following:

> Despite representations and assertions to HUD that Woonsocket recognized limited affordable housing opportunities and would take "steps" to preserve existing affordable housing stock throughout the city (referenced herein at ¶ 48f), *such "steps" were not undertaken*.

Complaint ¶ 59 (emphasis added); see also Complaint ¶¶ 58, 60-67.

"describe[d] at considerable length" the defendants' alleged schemes to violate the FCA through the Medicare and Medicaid programs. Id. at 233. Moreover, the complaint "describe[d] the procedures allegedly used … to submit false claims to the United States." Id. at 235. However, "the complaint never specifie[d] the dates or content of *any particular false or fraudulent claim* allegedly submitted to Medicare or Medicaid." Id. at 233 (emphasis added). Therefore, the First Circuit held that the complaint failed to meet the particularity requirements of Rule 9(b), and that this failure was fatal to the complaint. Id. at 235; see also Walsh, 98 F. Supp. 2d at 147 (complaint failed Rule 9(b) because it "merely describes the contracts between the vendor defendants and defendant hospitals, but does not *identify with particularity any sales or claims for payment that were allegedly fraudulent*" (emphasis added)).

Relator's failure to allege specific false claims fails the requirements of Rule 9(b) as applied to the FCA. Therefore, Counts One and Two should be dismissed.

### 2.     **The Court should dismiss Count One against each of the Defendants because Relator has alleged no specific basis for their FCA liability.**

"Individual liability under the FCA must be pled with specificity." Wilson, 224 F. Supp. 2d at 1049. Rule 9(b) requires that Relator's allegations must "inform each defendant of the nature of his alleged participation in the fraud." DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987). However, Relator has provided no specific basis for liability under the FCA for any of the Defendants.

Under the FCA, a defendant's § 3729(a)(1) liability requires that the defendant "present, or cause another person to present, a 'claim' for payment or approval to the United States." Boese, supra, at 2-10. "[M]ere knowledge of a [false] claim, rather than any affirmative act by the defendant," is insufficient to establish liability. Boese, supra, at 2-13. Instead, "some degree of participation in the claims process is required." United States v. Pres. & Fellows of Harvard

9

College, 323 F. Supp. 2d 151, 186-87 (D. Mass. 2004); see also United States v. Murphy, 937 F.2d 1032, 1039 (6th Cir. 1991) (FCA requires "some action by the defendant whereby the claim is presented or caused to be presented"). Similarly, § 3729(a)(2) requires both a false claim and some specific act of a Defendant "to get [that] false or fraudulent claim paid." § 3729(a)(2).

As discussed above, Relator identifies no specific false claim anywhere in his Complaint. See supra C.1. Hence, Relator makes no allegation connecting any of the Defendants to any specific false claim. He makes no specific allegation that any Defendant presented, or caused to be presented, any specific false claim to the government, or did anything to get a specific false claim paid. Cf. Complaint ¶ 135. Furthermore, Relator makes no specific allegation regarding the manner or extent to which any of the Defendants "participated in the claims process." See Harvard College, 323 F. Supp. 2d at 186-87. In fact, Relator provides no specific allegations concerning the role of any of the Defendants in a "fraudulent scheme" under the FCA. See Williams, 389 F.3d at 1258 (FCA complaint was insufficient where it "name[d] a laundry list of individuals without specifying their relation to the fraudulent scheme").

At most, Relator alleges that Mayor Menard signed and executed, on behalf of the City, in her official capacity, each of the alleged certifications submitted to HUD. See, e.g., Complaint ¶¶ 43, 48, 50(a)-(i). But even that is not enough to state a cause of action against the Mayor in her official capacity because those supposed certifications are not alleged to constitute "claims" for payment, as required under the FCA. See supra C.1; see also Karvelas, 360 F.3d at 232 (quoting 31 U.S.C. § 3729(c)) (FCA liability predicated upon submission of "request or demand … for money or property" from government). Nor does Relator allege what specific statement in those certifications is false or fraudulent. See supra C.1 (FCA requires Relator to identify specific statements on claim alleged to be false or fraudulent); see also Williams, 389

F.3d at 1257-58 (complaint failed to identify specifically the "fact misrepresented").[6]

As to Defendants Mathews, Miller, Bebeau, and Annarummo, Relator provides even less. See Harvard College, 323 F. Supp. 2d at 188-89 (individual defendant's working involvement in the subject area at issue, including assistance in preparation of submission to government, was insufficient basis for FCA liability where defendant had no involvement in the claims process). Relator "mention[s] some of [these] Defendants only in passing" in the Complaint, and thus falls well below the Rule 9(b) threshold. United States ex rel. Sanders v. E. Ala. Healthcare Auth., 953 F. Supp. 1404, 1413 (M.D. Ala. 1996).

Relator's allegations are an insufficient basis for the FCA liability of any of the Defendants. See DiVittorio, 822 F.2d at 1247. Moreover, the lack of any connection in the Complaint to any specific alleged false claim has "subjected the named individuals to vague, potentially damaging accusations of fraud" of the kind that the application of Rule 9(b) to the FCA is intended to prevent. See Williams, 389 F.3d at 1257. Therefore, the Court should dismiss Count One against each of the Defendants.

### 3. The Court should dismiss Count Two because Relator has failed to allege with specificity a conspiracy under the FCA.

The application of the Rule 9(b) requirement of pleading FCA claims with specificity extends to FCA conspiracy claims, as well. See United States v. Gericare Med. Supplies Inc., No. CIV.A.99-0366-CB-L, 2000 WL 33156443, at *9 (S.D. Ala. 2000) (noting "majority rule"); see also Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985) (requiring satisfaction of Rule 9(b) in actions alleging fraud conspiracies). Under Rule 9(b) as applied to a conspiracy alleged under

---

[6] Relator's allegation of the certifications at issue is also deceptive. For example, Relator mischaracterizes one of the certifications at the heart of his Complaint by failing to note that it is conditional. Compare 24 C.F.R. §91.225(d) ("HOME Program. Each participating jurisdiction must provide the following certifications: (1) *If it plans* to use HOME funds for tenant-based rental assistance, a certification that rental-based assistance is an essential element of its consolidated plan" (emphasis added)), with Complaint ¶ 50(i).

the FCA, "merely allud[ing] to an agreement between Defendants and … not specify[ing] the particulars of how and when the alleged conspiracy arose, who entered into it, or what act was committed in furtherance of the conspiracy" is insufficient.  United States ex rel. Capella v. Norden Sys., Inc., No. 3:94-CV-2063 (EBB), 2000 WL 1336487, at *11 (D. Conn. 2000); see also Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York, 808 F. Supp. 213, 230 (S.D.N.Y. 1992) ("General allegations that the defendants 'conspired' in the scheme do not sufficiently attribute responsibility for fraud to each individual defendant."); Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996) (holding that conclusory conspiracy allegation failed Rule 9(b) requirement).

In his Complaint, Relator provides no specifics concerning the conspiracy alleged under the FCA.  Relator provides no specific allegations concerning any agreement among the Individual Defendants as to their allegedly secret "true policy," let alone concerning any agreement actually to violate the FCA.  Relator provides no allegation regarding when or how the alleged conspiracy arose, or when each of the Defendants joined.  Relator merely provides a conclusory assertion that Defendants "did willfully and intentionally conspire" to defraud the government.  See Complaint ¶ 141.  This lack of specificity is fatal to Count Three, and therefore the Court should dismiss it.

**D.    The Court should dismiss Counts One and Two because the Complaint is based upon public disclosures and Relator is not an original source.**

The FCA provides this Court no subject matter jurisdiction where a *qui tam* action under the FCA is "based upon the public disclosure of allegations or transactions …, unless … the person bringing the action is an original source of the information."  § 3730(e)(4)(A).  The Court must read such jurisdictional requirement narrowly.  See United States ex rel. Precision Co. v. Koch Indus., Inc., 971 F.2d 548, 552 (10th Cir. 1992) ("[S]tatutes conferring jurisdiction on

federal courts are to be strictly construed, and doubts resolved against federal jurisdiction." (citation omitted)). Additionally, the burden of proof "is on the party asserting jurisdiction." Bannon v. Edgewater Med. Ctr., 406 F. Supp. 2d 907, 920 (N.D. Ill. 2005) (citation omitted). In this case, the FCA claims in Relator's Complaint fail to meet the requirements for subject matter jurisdiction under the FCA and, therefore, should be dismissed.

        1.      **<u>The components of the alleged false claims were publicly disclosed.</u>**

The FCA defines "public disclosure" as "disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media." § 3730(e)(4)(A). However, the FCA does not require that an allegation of fraud, itself, be publicly disclosed for the jurisdictional bar to apply. Under the FCA,

> if $X + Y = Z$, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed. Under the framework, X stands for the allegedly false set of facts set forth in the claim at issue, and Y is a proxy for the allegedly true set of facts. Thus, when X [the false set of facts] and Y [the true set of facts] surface publicly ... there is little need for *qui tam* actions, and the claim will be barred unless the relator qualifies as an original source.

O'Keeffe, 131 F. Supp. 2d at 94 (quoting United States ex rel. Springfield Terminal Rwy. Co. v. Quinn, 14 F.3d 645, 654-55 (D.C. Cir. 1994) (internal quotations and citations omitted)). In this case, both the submissions to HUD ("X" in the formula above), and the events that allegedly show those submissions to be false ("Y"), were public disclosures before Relator filed his Complaint. See United States ex rel. Feingold v. AdminiaStar Fed., Inc., 324 F.3d 492, 495 (7th Cir. 2003) (public disclosure exists "when the critical elements exposing the transaction as fraudulent are placed in the public domain"); United States ex rel. Reagan v. E. Tex. Med. Ctr.

13

Reg'l Healthcare Sys., 274 F. Supp. 2d 824, 843 (S.D. Tex. 2003) (public disclosure "if sufficient information was previously disclosed so that the government is deemed 'alert'" to alleged false claims).

Each of the plans and reports at issue, including the Consolidated (5-Year) Plan and annual action plans, was an administrative report, and therefore a public disclosure, within the meaning of the statute. See § 3730(e)(4)(A). As Relator alleges, the City submitted each plan and report to HUD, which approved them. See United States ex rel. Coleman v. State, No. IP96-0714-C-T/G, 2000 WL 1357791, at *11 (S.D. Ind. 2000) (federal agency approval of plan submitted by state constituted administrative report and, therefore, public disclosure). Thus, the City submitted directly to the government one of the two components essential to the false claim alleged. See United States v. Bank of Farmington, 166 F.3d 853, 861 (7th Cir. 1999) ("disclosure to the public official responsible for the claim effectuates the purpose of disclosure to the public at large").

At the same time, nearly every one of the events that Relator alleges comprise the City's secret "true policy" was fully disclosed in local news reports, which also constitute public disclosure. See § 3730(e)(4)(A).[7] Although Defendants deny Relator's characterization of these events, and Relator's allegation that they comprised a secret policy of any kind, the underlying events themselves were reported in the Woonsocket newspaper.[8] These include the City's alleged affordable housing rank within the State of Rhode Island (compare Complaint ¶¶ 68-74

---

[7] Relator alleges, somehow, both that the City pursued its "true policy" for ten years through a number of public events and, at the same time, that the "true policy" was a secret.

[8] On a 12(b) motion, the Court "may consider 'not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice' without converting the motion to dismiss into a motion for summary judgment." Greene v. Rhode Island, 398 F.3d 45, 48 (1st Cir. 2005) (citation omitted); see also Bannon v. Edgewater Med. Ctr., 406 F. Supp. 2d 907, 919 & n.16 (N.D. Ill. 2005) (noting newspaper articles within public record subject to judicial notice on motion to dismiss FCA claim). Each of the newspaper articles referenced is attached to the Affidavit of Justin P. O'Brien, Esq. in Support of Motion to Dismiss, filed herewith.

14

with Russ Olivo, *City no longer first in affordable housing*, The Call, Jan. 31, 2004), the City's alleged opposition to certain development plans for land off Rhodes Avenue (compare Complaint ¶¶ 75-80 with Russ Olivo, *WNDC rings up? no sale?*, The Call, Feb. 7, 2001), the City's alleged support for a Wal-Mart store (compare Complaint ¶ 83 with Russ Olivo, *City favors Wal-Mart bid*, The Call, Dec. 9, 2003), the City's alleged support for an apartment building at Mill Street (compare Complaint ¶¶ 84-90 with Russ Olivo, *Zoners OK apartments*, The Call, May 30, 2001, and Russ Olivo, *Builder wants to change permit*, The Call, July 19, 2001, and Russ Olivo, *River Bend could become condos*, The Call, June 29, 2004), the City's alleged opposition to a planned apartment complex at Diamond Hill Road / Fulton Street (compare Complaint ¶¶ 91-97 with Russ Olivo, *City housing plan faces uphill battle*, The Call, Apr. 9, 2001, and Joseph B. Nadeau, *City housing plan on hold*, The Call, Apr. 10, 2001), the City's alleged support for a condominium building at Bancroft Mill (compare Complaint ¶¶ 98-101 with Russ Olivo, *Bancroft mill goes to luxury*, The Call, Oct. 5, 2003)[9], and the Mayor's alleged opposition to a particular state tax provision (compare Complaint ¶¶ 102-113 with Russ Olivo, *City seeks repeal of tax break*, The Call, May 26, 2002, and Russ Olivo, *Mayor pitches housing tax break*, The Call, Feb. 14, 2003).[10]

### 2. The allegations in the Complaint are "based upon" the public disclosures.

Relator's allegations in the Complaint are based upon the public disclosures identified above. As another Judge of this District has explained, the majority rule that has evolved among federal courts is that "an action is 'based upon' a public disclosure when the supporting allegations are similar to or 'the same as those that have been publicly disclosed … regardless of

---

[9] This event occurred in 2003, not 2002 as the Complaint alleges.

[10] Relator also makes a number of other, broad allegations regarding Defendants' alleged "true policy." See, e.g., Complaint ¶¶ 58-67, 114-120. However, each of these fails to meet the specificity required by Rule 9(b).

where the realtor obtained his information." O'Keeffe, 131 F. Supp. 2d at 92 (quoting United States ex rel. Doe v. John Doe Corp., 960 F.2d 318, 324 (2d Cir. 1992)); see id. (listing cases); see also Boese, supra, at 4-84 n.365 (noting majority rule adopted by Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and D.C. Circuits). Here, there is no distinction between the allegations in Relator's Complaint and the information contained in the public disclosures cited above, other than Relator's characterizations of these HUD reports and events. Therefore, Relator's allegations are "based upon" the public disclosures.[11]

Moreover, Relator in this case provides only a conclusory allegation that his claims are *not* based upon public disclosures, but derived from his own "investigation." See Complaint ¶ 8. An FCA *qui tam* relator "may not rely on mere conclusory allegations of jurisdiction but must support the facts showing jurisdiction by competent proof." United States ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1162 (10th Cir. 1999); see also Bannon, 406 F. Supp. 2d at 920 (on subject matter jurisdiction challenge, "the court is free to weigh the evidence to determine whether jurisdiction has been established" by the party asserting jurisdiction (citation omitted)). Thus, Relator's conclusory allegation is insufficient to support subject matter jurisdiction in this case.

### 3. Relator is not an original source.

Finally, Relator is not an "original source" under the FCA. An original source is one who "has direct and independent knowledge of the information on which the allegations are based." § 3730(e)(4)(B). "A relator's knowledge is 'direct' if she acquired it through her own efforts without an intervening agency …." O'Keeffe, 131 F. Supp. 2d at 93. "A relator is said to have

---

[11] Cf. United States ex rel. LaValley v. First Nat'l Bank of Boston, 707 F. Supp. 1351, 1367 (D. Mass. 1988) (Wolf, J.) (in one of the first published cases addressing the 1986 FCA amendments creating the public disclosure/original source rule, this Court held that an FCA claim was not based upon a public disclosure because the claim "did not originate from" the disclosure).

direct knowledge of fraud when he 'saw [it] with his own eyes." United States ex rel. Barth v. Ridgedale Elec., Inc., 44 F.3d 699, 703 (8th Cir. 1995) (citation omitted). A relator's knowledge "is 'independent' if her knowledge is not dependent on the public disclosure." O'Keeffe, 131 F. Supp. 2d at 93.

The original source requirement "was intended to avoid parasitic lawsuits by 'disinterested outsiders.'" Barth, 44 F.3d at 703 (citation omitted). Thus, to constitute an original source, "a *qui tam* plaintiff must allege specific facts—as opposed to mere conclusions—showing exactly how and when he or she obtained direct and independent knowledge of the fraudulent acts alleged in the complaint and support those allegations with competent proof." Hafter D.O., 190 F.3d at 1162. "Only in this way will the district court be able to adequately identify legitimate *qui tam* actions and weed out parasitic plaintiffs who offer only secondhand information, speculation, background information or collateral research." Id.; see also Barth, 44 F.3d at 703 ("collateral research and investigations" do not establish direct and independent knowledge); United States ex rel. Kreindler & Kreindler v. United Tech. Corp., 985 F.2d 1148, 1159 (2d Cir. 1993) (same).

In this case, Relator provides no specific allegations that would show that his claims are the product of "direct and independent knowledge." See Hafter D.O, 190 F.3d at 1162; Barth, 44 F.3d at 703. Instead, Relator provides only a conclusory allegation that he "acquired direct, personal knowledge" of the allegations in his complaint through his own "investigation." See Complaint ¶ 8. Thus, Relator fails to satisfy the original source requirement and therefore, because his allegations are based upon public disclosures, the Court should dismiss Counts One and Two.

E.     **The Court should dismiss all Counts against Defendants Mathews, Miller, Bebeau, and Annarummo pursuant to Rule 12(b)(2) because the Court lacks personal**

**jurisdiction over them.**

Relator bears the burden of proving the Court's personal jurisdiction over the Defendants. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). In this case, specific personal jurisdiction requires that each Defendant "have certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). This requirement "must be met as to each defendant." Rush v. Savchuk, 444 U.S. 320, 332 (1980); see also Calder v. Jones, 465 U.S. 783, 790 (1984) ("[e]ach defendant's contacts with the forum [s]tate must be assessed individually").

Defendants Mathews, Miller, Bebeau, or Annarummo each live and work in Rhode Island. See Affidavits of Mathews, Miller, Bebeau and Annarummo, filed herewith.[12] Relator makes no allegation to the contrary. Moreover, as discussed above, Relator makes no allegation in the Complaint that any of these Defendants executed the false certifications allegedly submitted to the HUD regional office in Boston, Massachusetts, which forms the basis for Relator's allegation of jurisdiction in this Court. See Complaint ¶¶ 7, 43, 48, 50(a)-(i). Relator also makes no allegation of *any other* contacts between any of these four Defendants and the forum state. Finally, Relator fails to the extent that he bases his allegations of personal jurisdiction on his insufficiently pled conclusory allegation of a conspiracy. See Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1031 (D.C. Cir. 1997) ("'[b]ald speculation' or a 'conclusionary statement' that individuals are co-conspirators is insufficient to establish personal jurisdiction" (citation omitted)); see also McCabe v. Basham, No. 05-CV-

---

[12] "In evaluating whether plaintiffs have established personal jurisdiction, the Court need not treat all of plaintiffs' allegations as true but instead may receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts." Jung v. Ass'n of Am. Med. Colls., 300 F. Supp. 2d 119, 127 (D.D.C. 2004) (quotation and citation omitted).

0073-LRR, 2006 WL 399266, at *6-7 (N.D. Iowa 2006) (no personal jurisdiction based on conspiracy allegation where plaintiffs "have failed to allege any facts in their Complaint to support this conclusory assertion of a conspiracy").

In other words, Relator has provided no basis for this Court to find that any of these four Defendants has sufficient "minimum contacts" with Massachusetts. See Int'l Shoe Co., 326 U.S. at 316. Therefore, Relator has provided no basis for this Court to find these four Defendants subject to its jurisdiction. The Court should dismiss all Counts against them in the Complaint.

## IV. Conclusion

For each of the forgoing reasons, the Court should dismiss the Complaint in its entirety.

## REQUEST FOR ORAL ARGUMENT

Defendants request oral argument on this motion.

Respectfully Submitted,

| | |
|---|---|
| **CITY OF WOONSOCKET, RHODE ISLAND; SUSAN D. MENARD; JOEL D. MATHEWS; PAULETTE MILLER; OWEN T. BEBEAU; and MICHAEL ANNARUMMO**<br>By their Attorneys, | **SUSAN D. MENARD, in her individual capacity,**<br>By her Attorney, |
| /s/ Michael B. Galvin<br>Thomas E. Dwyer (BBO No. 139660)<br>Michael B. Galvin (BBO No. 630515)<br>Justin P. O'Brien (BBO No. 658765)<br>**DWYER & COLLORA, LLP**<br>600 Atlantic Ave.<br>Boston, MA 02210-2211<br>(617) 371-1000<br>mgalvin@dwyercollora.com | /s/ Howard R. Croll<br>Howard R. Croll (BBO No. 105380)<br>**FONTAINE & CROLL, LTD**.<br>34 Hamlet Avenue<br>Woonsocket, RI 02895<br>(401) 765-0200 |

Dated: May 19, 2006

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULES 7.1(A)(2)

The undersigned counsel hereby certifies that a good faith attempt was made to eliminate and narrow the issues raised in this motion by conferring with Relator's attorney.

/s/  Michael B. Galvin

Dated:  May 19, 2006

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on May 19, 2006.

/s/  Michael B. Galvin

Dated:  May 19, 2006

61946_1