UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* GORDON F.B. ONDIS | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| CITY OF WOONSOCKET, RHODE ISLAND; SUSAN D. MENARD, in her individual capacity and in her capacity as Mayor of the City of Woonsocket, Rhode Island; JOEL D. MATHEWS, in his individual capacity and in his capacity as Director of Planning and Community Development of the City of Woonsocket, Rhode Island; PAULETTE MILLER, in her individual capacity and in her capacity as Assistant Director of Planning and Community Development of the City of Woonsocket, Rhode Island; OWEN T. BEBEAU, in his individual capacity and in his capacity as Director of Human Services of the City of Woonsocket, Rhode Island; and MICHAEL ANNARUMMO, in his individual capacity and in his capacity as Director of Administration and Director of Public Works of the City of Woonsocket, Rhode Island; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

CIVIL NO. 05-10312-MLW

## RELATOR'S OPPOSITION AND OBJECTION TO DEFENDANTS' MOTION TO DISMISS UNDER RULE 12

Relator herewith files his objection and opposition to Defendants' Motion to Dismiss and, in support of such objection, argues and avers as follows:

1

### *Standard of Review*

The standard of review employed by the First Circuit provides for analysis and consideration only of those facts alleged by the Plaintiff in light of the law. "We review de novo "a district court's allowance of a motion to dismiss for failure to state a claim." TAG/ICIB Servs. v. Pan Am Grain Co., 215 F.3d 172, 175 (1st Cir. 2000). We "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Id. Nicolaci v. Anapol, 387 F.3d 21, 24 (1st Cir. 2004). Our objective is "to determine whether the complaint . . . alleges facts sufficient to make out a cognizable claim." Carroll v. Xerox Corp., 294 F.3d 231, 241 (1st Cir. 2002). In making this determination, we may affirm on any independently sufficient basis. Id. United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 224 (1st Cir. 2004).

Moreover, the First Circuit as advised caution before applying any statutory bar to Qui Tam litigation such as is before this Court. "…courts should proceed with caution before applying the statutory bar of § 3730(e)(3) in ambiguous circumstances." United States ex rel. S. Prawer & Co. v. Fleet Bank, 24 F.3d 320, 328 (1st Cir. 1994).

### *General Objection*

Rather than consideration and analysis of Relator's Complaint as is required generally under Rule 12 practice Defendants have attempted to have this Court consider the pending motion as it were a Motion for Summary Judgment. Defendants have attempted to insert facts supported by affidavits and have further offered

unsubstantiated facts to the Court within their Memorandum all without the benefit of any discovery whatsoever.

For example, Defendants attempt to influence this Court by alleging that Relator stands to "benefit financially" from the housing policy of Defendant Woonsocket. <u>Memorandum, 3.</u>   Therefore, Defendants miraculously conclude, Relator is not an "inside whistleblower"  While Relator freely admits that he is in the business of providing affordable housing there are no facts that could possibly lead to the conclusion that he benefits from the acts of Defendants much less that he is disqualified as  a Relator.   Defendants have peppered their submission to this Court with similar injections of unsupported "facts" totally inappropriate to Rule 12 consideration.

### *Argument*

**I.     DEFENDANTS SUGGEST THAT THEY SHOULD BE DISMISSED IN THEIR INDIVIDUAL CAPACITIES INASMUCH AS THERE IS NO AVERMENT OF PERSONAL BENEFIT.   SUCH AVERMENT IS NOT REQUIRED AS THIS IS NOT THE LAW OF THE FIRST CIRCUIT AND IS BARELY RECOGNIZED ELSEWHERE.**

In support of their contention that Relator is not entitled to pursue claims against Defendants in their individual capacities they cite to a case from the Western District of North Carolina and a Third Circuit case to the effect that Defendants in their individual capacities must have benefited personally. <u>Memorandum, 6.</u> They cite to no applicable First Circuit authority.

Defendants have failed to point out to the Court that the decision in <u>Dunleavy</u> was one on appeal and had nothing whatsoever to do with pleading requirements under a Rule 12 standard.   Moreover, the <u>Dunleavy</u> court  mentioned its view on individual

liability in passing only, hardly in the context of pronouncement of a rule.  "Finally, we note in passing that we agree with the District Court that an employee of a local governmental unit is not subject to suit under the Act when the employee does not personally benefit from the transaction constituting a violation of the Act; therefore, we conclude that no extended discussion is necessary with respect to this issue."  United States ex rel. Dunleavy v. County of Delaware, 279 F.3d 219, 221 (3d Cir. 2002)

In the North Carolina case promoted by Defendants the Court's holding resulted from the complaint being bereft of any references to the individual Defendants other than their inclusion in the case caption. "…Relator…has failed completely to allege that Defendants Newton, Tipton, and Wood, as individuals, did anything in violation of the FCA. Their names are not included in any part of the factual allegations of the complaint.  United States ex rel. Wilson v. Graham County Soil & Water Conservation Dist., 224 F. Supp. 2d 1042, 1049-1050 (D.N.C. 2002).   As such, this case is easily distinguishable from the complaint at bar.

Relator certainly cannot be required to allege personal benefit absent adoption of that rule in this circuit.   The authorities suggested by Defendants are at best tenuous, inapplicable and do not support dismissal of claims against Defendants in their individual capacities in the earliest stage of litigation.

Indeed, the holdings of the First Circuit seem to suggest precisely the opposite conclusion to that proffered by Defendants.

> A person need not directly submit claims to the government to be liable. United States v. Bornstein, 423 U.S. 303, 309, 46 L. Ed. 2d 514, 96 S. Ct. 523 (1976) ("It is settled that the [FCA] ... gives the United States a cause of action against a subcontractor who causes a prime contractor to submit a false claim to the Government."); United States v. Mackby, 261 F.3d 821, 828 (9th Cir. 2001) (owner of physical therapy clinic liable under FCA where he instructed clinic and billing service to use incorrect

provider identification number). Generally, mere knowledge of the submission of claims and knowledge of the falsity of those claims is insufficient to establish "causation" under the FCA. United States ex rel. Piacentile v. Wolk, 1995 U.S. Dist. LEXIS 580, No. 93-5773, 1995 WL 20833, *3-4 (E.D. Pa. Jan. 17, 1995).

… actually delegating the submission of claims to one who then files a false claim suffices. Mackby, 261 F.3d at 827 (doctor caused false claims to be submitted to Medicare where he instructed his clinic's billing service to put false information on Medicare claims); Krizek, 111 F.3d at 943 (defendant liable where he delegated to his wife authority to submit claims on his behalf and did not review them); see also United States ex rel. Marcus v. Hess, 317 U.S. 537, 544-45, 87 L. Ed. 443, 63 S. Ct. 379 (1943) (construing earlier version of FCA to reach "any person who knowingly assisted in causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government").

United States v. President & Fellows of Harvard College, 323 F. Supp. 2d 151, 186-187 (D. Mass. 2004).

## II. DEFENDANTS' ASSERTIONS THAT RELATOR HAS NOT ALLEGED FALSE CLAIMS FLIES IN THE FACE OF THE LAW AND THE FACTS AS PROVIDED IN DETAIL WITHIN THE COMPLAINT.[1]

"A claim is defined as "any request or demand . . . for money or property which is made . . . if the United States Government provides [or will reimburse] any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(c)". Maturi v. McLaughlin Research Corp., 413 F.3d 166, 172 (1st Cir. 2005). More specifically:

> n15 A number of courts have also found FCA violations where a defendant falsely certifies compliance with certain conditions required as a prerequisite for a government benefit or payment in order to induce that benefit. See, e.g., Thompson, 125 F.3d at 902. In such cases, false certification for the purpose of receiving a payment or benefit becomes the practical equivalent of a

---

[1] Defendants assert that Relator's allegations of false claims are unrelated to the process by which the City actually applies for and receives federal funds. Memorandum, 2. However, Defendants never actually reveal how they contend that process works.

statutory false claim.  United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 229-233 (1st Cir. 2004).

The North Carolina case to which the Court was directed by Defendants suggests that a claim has a broad meaning.  Citing to a U.S. Supreme Court case the North Carolina court held a claim subject to the FCA is one, *inter alia,* "that caused the government to pay out money or to forfeit moneys due." Harrison, 176 F.3d at 788. This test should be construed broadly. The FCA is "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government ... The Court has consistently refused to accept a rigid, restrictive reading [of the Act]." Id. (quoting United States v. Neifert-White Co., 390 U.S. 228, 233, 19 L. Ed. 2d 1061, 88 S. Ct. 959 (1968))." United States ex rel. Wilson v. Graham County Soil & Water Conservation Dist., 224 F. Supp. 2d 1042, 1049 (D.N.C. 2002).

A reading of the underlying Supreme Court holding makes clear that Defendants' attempts to narrowly define a "claim" are grossly misplaced. "Analogous reasoning leads us to hold today that the False Claims Act should not be given the narrow reading that respondent urges. This remedial statute reaches beyond "claims" which might be legally enforced, to all fraudulent attempts to cause the Government to pay out sums of money. We believe the term "claim," as used in the statute, is broad enough to reach the conduct alleged by the Government in its complaint." United States v. Neifert-White Co., 390 U.S. 228, 233 (U.S. 1968).

Relator's complaint identifies false claims generally, specifically, repeatedly and in great detail.  It easily complies with the pleading requirements to establish submission of a false claim.

The complaint generally describes the false submissions to HUD for the purpose of obtaining money. "Such transactions are the specific, false claims of Defendants contained in each of the consolidated and action plans filed with HUD beginning fiscal year 2000-2001 through fiscal year 2004-2005 (also known as the Consolidated Five (5) Year Plan) and Consolidated Annual Performance and Evaluation Reports, shown to be false in light of the true policies of Defendants and the subsequent receipt of money from HUD to which Defendant City would not otherwise be entitled but for such false statements." Complaint, ¶ 8.

The nexis between the false statements of Defendants and payment by the government to Defendant Woonsocket is replete throughout the complaint. It is repeated again and again.

> "32.    Defendants' false, affirmative assurances, statements and certifications that Defendant City was implementing a public policy which was, in truth, totally opposed to Defendants' true public policy, induced HUD to award funds to Defendant City which HUD would otherwise have been required to deny statutorily.
>
> 33.    By knowing submission of patently false representations assurances, statements and certifications, Defendants induced and caused HUD to honor the false claims of Defendant City for receipt of CDBG, HOME and ESG program monetary awards. Additionally, by knowingly failing to disclose the true public policy adopted and implemented by Defendants, Defendants induced and caused HUD to honor the false claim of Defendants for receipt of CDBG, HOME and ESG program monetary awards." Complaint, ¶¶ 32-33.

7

Apparently unaware of the case law defining the broad definition of a "claim" under the False Claims Act, Defendants characterize the seventy pages of excerpts of specific false statements submitted to HUD to obtain money as "a pile of irrelevant excerpts". In fact, these specific references to individual false statements in the submissions to HUD constitute the specific frauds calculated to obtain money from the government under the false pretenses that are these statements.[2] These multiple pages of specific false statements constitute the specificity Defendants find so lacking.

Although Defendants fail to even address the holding of the Supreme Court in Neifert-White or in the other cases cited by Relator they draw the Court's attention to Mercy Hospital of Pittsburg as seeming to stand for the principle that a federal application generally is not part of a claim. Defendants did not inform the Court, however, that the facts under Mercy Hospital involved an application to become a participant in a medical study and had no connection relationship, even remotely, with money. "Specifically, the application was a request that Mercy be designated a clinical center for the NSABP STAR P-2 study. It was not a request or demand for federal funds." Dookeran v. Mercy Hosp. of Pittsburgh, 281 F.3d 105, 109 (3d Cir. 2002).

In truth, there is no case standing for the proposition advanced by Defendants. The law of Seifert-White applies. False statements in applications to obtain federal money are "false claims" under the False Claims Act.[3]

---

[2] Defendants acknowledge Relator's pleading of these seventy (70) individual statements at pp. 49-57 pf the Complaint. Memorandum, 8.

[3] Defendants again attempt to improperly and impermissibly introduce alleged "facts" before the Court in arguing that no false claim is referenced in the complaint. Such impermissible argument is made in the "Background" provided to the Court as well as in an appended footnote. Complaint, 4.

### III. DEFENDANTS MISCONSTRUE THE LAW OF CIVIL CONSPIRACY AS APPLIED TO FALSE CLAIMS ACTIONS.

Defendants have failed to cite the Court to the signal cases controlling the adjudication of conspiracy allegations in False Claims cases. These are:

> A person is liable under § 3729(a)(3) where he or she "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." To prove liability, a plaintiff must show: "'1 the defendant conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States; and (2) one or more conspirators performed any act to effect the object of the conspiracy." United States ex rel. Wilkins v. N. Am. Constr. Corp., 173 F. Supp. 2d 601, 639 n.33 (S.D. Tex. 2001). General civil conspiracy principles apply to § 3729(a)(3). United States ex rel. Durcholz v. FKW Inc., 189 F.3d 542, 545 n.3 (7th Cir. 1999); United States v. Murphy, 937 F.2d 1032, 1039 (6th Cir. 1991). <u>United States v. President & Fellows of Harvard College, 323 F. Supp. 2d 151, 196 (D. Mass. 2004)</u>

> (Plaintiff) is not required to show an express agreement; conspiracies, by their very nature, are not often susceptible to direct proof. <u>United States ex rel. Durcholz v. FKW Inc., 189 F.3d 542, 546 (7th Cir. 1999)</u>

> A recent authoritative statement of what is required to prove a civil conspiracy is found in Hooks v. Hooks, 771 F.2d 935, 943-44 (6th Cir. 1985):

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is [**21] not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

> <u>United States v. Murphy, 937 F.2d 1032, 1039 (6th Cir. 1991)</u>

Thus, civil conspiracy is a cause of action wherein the conspiracy is inferred by the finder of fact by the totality of the circumstances. It is not necessary for Relator to allege the existence of an express agreement nor is it necessary for Relator to

9

allege that each conspirator had knowledge of the conduct of each of the other conspirators.

It is necessary only that Relator allege that each of the conspirators shared in the general conspiratorial objective and that at least one overt act was performed in furtherance of the conspiracy, that is the conspiracy was more than a mere figment of the imagination.

Relator has met his burden.  The complaint specifically lays out the roles of the individual Defendants on implementation of the overall scheme.  Complaint, ¶¶ 9-13.  Moreover, the Complaint provides additional detail regarding the roles of the individual Defendants in the further detail of the complaint.   In fact, Defendant Menard's name is referenced twenty-six (26) times in the complaint.   And, all of the other allegations within the complaint attribute proscribed conduct to all of the Defendants acting jointly.  Any one of specific acts of submission of false information to HUD as alleged by Relator constitutes an overt act in furtherance of the conspiracy.

Because the very nature of civil conspiracy relies heavily on the inferences drawn by the finder of fact, it is wholly inappropriate to require Relator to allege each and every inference and evidentiary nuance upon which such finder of fact might rely in coming to the conclusion of the existence of civil conspiracy.   It is sufficient, as Relator has done, to allege participation by each of Defendants and to describe their roles in the common conspiratorial objective alleged.

      **IV.**    **THIS COURT HAS PERSONAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS BY VIRTUE OF FEDERAL STATUTE AND COMMON LAW.**

The False Claims Act itself establishes jurisdiction over all of the Defendants. Presumably, the following provision was included in order to avoid multiple litigation of the same facts which would undoubtedly result where there are multiple Defendants in corporate environments:

> (a) Actions under section 3730. Any action under section 3730 [31 USCS § 3730] **may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 [31 USCS § 3729] occurred.** A summons as required by the Federal Rules of Civil Procedure shall be issued by the appropriate district court and served at any place within or outside the United States. (emphasis added).
>
> 31 USCS § 3732

Relator clearly states in his complaint that venue is proper in this Court based upon the conduct of Defendants in causing false statements to be filed with HUD in Boston. Complaint, ¶ 7.

Additionally, U.S.C. § 1345 grants broad jurisdictional power to the district courts over suits when the United States is plaintiff. United States v. Lahey Clinic Hosp., Inc., 399 F.3d 1, 6 (1st Cir. 2005). Absent such authority to exercise personal jurisdiction over those alleged to be involved in multiple-Defendant False Claims Act cases the government or relators would be required to try and re-try such cases in multiple jurisdictions.

The specific issue of the applicability of International Shoe type analysis, that is sufficient minimum contact so as to preclude denial of due process, has apparently been visited but once in a False Claims Act case. The District Court in the Southern District of Illinois held in 2001 that due process minimum contacts must be judged on a national basis—and not on a judicial district basis—in Qui Tam cases.

11

United States ex rel. Finks v Huda (2001, SD Ill) 205 FRD 225.

The Huda Court reasoned as follows:

> In order for a federal court to exercise personal jurisdiction over a defendant in a federal question case, the court must determine (1) whether the applicable statute confers jurisdiction by authorizing service of process on the defendant, and (2) whether the exercise of jurisdiction accords with due process requirements. See United States v. De Ortiz, 910 F.2d 376, 382-83 (7th Cir. 1990) (citing Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104, 98 L. Ed. 2d 415, 108 S. Ct. 404 (1987)). It is undisputed that 31 U.S.C. § 3732(a) of the False Claims Act authorizes nationwide service of process.
>
> Neither the Supreme Court nor the Seventh Circuit has addressed the issue of the relevant forum (the United States or the state in which the federal court sits) on which to base a minimum contacts analysis under the False Claims Act. The Seventh Circuit, however, has addressed the issue of the relevant minimum contacts forum in relation to other federal statutes authorizing nationwide service of process, and concluded that a "national contacts" analysis is appropriate. See, e.g., United Rope Distribs., Inc. v. Seatriumph Marine Corp., 930 F.2d 532, 534 (7th Cir. 1991) (admiralty law); Lisak v. Mercantile Bancorp., Inc., 834 F.2d 668, 671-72 (7th Cir. 1987) (RICO); Fitzsimmons v. Barton, 589 F.2d 330, 332-34 (7th Cir. 1979) (securities law).
>
> United States ex rel. Finks v. Huda, 205 F.R.D. 225, 227 (D. Ill. 2001).

As in the Seventh Circuit, the First Circuit has adopted the concept of acceptable minimal contacts on a national basis. United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 41-42 (1st Cir. 1999). And, that all individual defendants have sufficient national contact is admitted by those Defendants by submission of their various affidavits of residency to this Court.

Thus, the only applicable, although not controlling, law on the subject of personal jurisdiction in a False Claims Act context is that cited herein by Relator.

Defendants have cited to no controlling authority or, indeed, any authority whatsoever applicable to Qui Tam litigation. Accordingly, Defendants' contention that personal jurisdiction over these individual Defendants should not be invoked must be rejected by this Court.

> V. **RELATOR IS AN "ORIGINAL SOURCE" WITHIN THE MEANING OF THE FALSE CLAIMS ACT;  RELATOR'S COMPLAINT IS NOT "BASED UPON" PUBLIC DISCLOSURES AND DEFENDANTS HAVE TAKEN REPEATED AFFIRMATIVE STEPS TO PREVENT PUBLIC DISCLOSURE OF THEIR FRAUDULENT CONDUCT.**
>
> a. **The Complaint is not "based upon" public disclosure.**

Although the First Circuit has not adopted a position there are two camps on the meaning of the "public disclosure bar". Nationally, the majority view sees the bar as proscribing actions making allegations that are similar to or the same as those publicly disclosed. The minority view holds the bar to be applied only to actions specifically derived from public disclosures. "The First Circuit has yet to enter this fray. However, two district courts in this district appear to have adopted the minority position. See LaValley, 707 F. Supp. at 1367 (Wolf, J.) (finding jurisdiction where "the information and knowledge upon which [the] action is based did not originate from" the source of public disclosure); United States ex rel. LeBlanc v. Raytheon Co., 874 F. Supp. 35, 41 (D. Mass.) (Lindsay, J.) (noting in dicta, "in light of the plain meaning of the words 'based upon', this Court is inclined to agree with the Fourth Circuit and Judge Wolf."), aff'd, 62 F.3d 1411 (1st Cir. 1995)". United States ex rel. O'Keeffe v. Sverdup Corp., 131 F. Supp. 2d 87, 92 (D. Mass. 2001)

By either standard, the instant complaint is not based upon public disclosures.

13

Defendants have provided the Court with several alleged newspaper articles which relate to <u>some</u> of the facts alleged by Relator there is no mention in any of those articles regarding any allegation by anyone that the facts in those articles were contrary to representations to HUD and, thus, constituted false statements. The publication of a few facts related to the hundreds of facts averred in the complaint does not constitute proof that the complaint was based upon public disclosure.[4]

Defendants have referred the Court to the "X + Y = Z" analysis cited in the <u>O'Keeffe</u> case wherein the public disclosure bar is said to operate when both the false statement and the truth are disclosed. <u>Memorandum, 13</u> In so doing, Defendants completely fail to argue that the false statements made to the government were publicly disclosed and fail to justify their affirmative conduct to prevent public disclosure of those facts.

A close analysis of the newspaper articles provided to the Court reveals that they do not address many of the allegations made in Relator's complaint, thus proving that Relator's basis of knowledge. For example, Defendants have provided no articles regarding the allegation of harassment of the Neighborhood Development Corporation. ¶¶ 75-80. The only article provided relates to the refusal of the NDC to sell lots to the City ("*WNDC rings up? No sale?*" *Woonsocket Call, February 7, 2001*). No articles are presented relative to the frustration of Excel Management. <u>Complaint, ¶ 82.</u> No article is provided regarding the Andola Fibres matter alleged. <u>Complaint, ¶¶ 91-97.</u> No article is provided regarding the allegations contained in the complaint at <u>¶¶ 107-113.</u> No article is provided regarding the allegations contained in the complaint

---

[4] The submission of these articles by affidavit of counsel in a Rule 12 motion is wholly improper. This is another attempt by Defendants to treat their motion as one for summary judgment without the benefit of discovery. The Court ought not consider this material in adjudication of the pending motion.

14

at ¶¶ 114-120.  No article is provided regarding the allegations contained in the complaint at ¶¶ 121-123.  No article is provided regarding the allegations contained in the complaint at ¶¶ 124-132.

    **b.  The Complaint specifically sets forth the basis of Relator's standing as an "original source".**

"Section 3730(e)(4)(A) only requires that the relator be an original source of the information in a public disclosure if the court finds that the relator's action was based upon that public disclosure." United States ex rel. La Valley v. First Nat'l Bank, 707 F. Supp. 1351, 1367 (D. Mass. 1988).

¶ 8 of the complaint specifically sets forth Relator's contention that he is an "original source", identifies the basis of such conclusion and avers facts that underlie such contention.  The Court should, in accord with Rule 12 Motion to Dismiss standard of review, accept the facts pled as true and deny Defendants' motion.

As specifically averred, Relator was in a unique position to appreciate and understand the significance of Defendant Menard's words as she strode into one of his properties vowing to rid Woonsocket of Section 8 housing.  Relator, is a provider of affordable housing in Woonsocket and elsewhere for many years. He has worked on preparation of applications for Community development Block Grant assistance for an entitlement community similar to Woonsocket and was well aware that Woonsocket had obtained CDBG and other HUD funds.  As such, he immediately understood after hearing of the Mayor's remarks from his own experience that Woonsocket could not at once be attempting to remove Section 8 affordable house and receiving Community Development Block Grant Money from HUD without making false claims to the federal government.

Relator's contention that he is an "original source" is not merely conclusory as is suggested by Defendants. The facts underlying Relator's "original source" status are specifically averred in the complaint at ¶¶ 8, 21-30.

> An "original source" is defined to be "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the government before filing [suit]." 31 U.S.C. § 3730(e)(4)(B). This provision has been construed to impose a conjunctive requirement of demonstrating that the relator's knowledge is both direct and independent. See Springfield Terminal Rwy., 14 F.3d at 656. A relator's knowledge is "direct" if she acquired it through her own efforts without an intervening agency, and it is "independent" if her knowledge is not dependent on the public disclosure. See id.
>
> United States ex rel. O'Keeffe v. Sverdup Corp., 131 F. Supp. 2d 87, 93 (D. Mass. 2001)

The facts pled by Relator specifically and precisely comply with the definition of "original source" in O'Keeffe as cited by Defendants themselves. There are no facts that suggest that prior to the intrusion of Defendant Menard on the property of Relator there was any realization by anyone of the frauds of Defendants on the government. Moreover, there are no facts suggesting that Relator had even been aware of the existence of the few newspaper articles provided to the Court as evidence of public disclosure. Clearly, the realization of the existence of false statements to the government came to the Relator as a result solely of the Mayor's pronouncement of her plans for affordable housing in the context of Relator's background and experience.

Interestingly, while Relator's knowledge that a fundamental fraud had occurred is based upon his background and experience, he did commission further investigation based upon his recognition of the divergence of Mayor Menard's stated intention to rid Woonsocket of affordable housing and necessary certifications to obtain HUD funds. Courts have held that even where there was no uniquely situated relator,

16

such as Gordon Ondis, an investigation commissioned by an individual can qualify that person as a relator.  "At least one court has held that knowledge obtained through an investigation can be the basis for a qui tam action. See United States ex rel. Hartigan v. Palumbo Bros., Inc., 797 F. Supp. 624, 630-31 (N.D. Ill. 1992)."

United States ex rel. Lamers v. City of Green Bay, 168 F.3d 1013, 1017 (7th Cir. 1999).

      **c.**      **The irony of Defendants now attempting to bar this action based on public disclosure in light of their conduct is inescapable.**

In the complaint Relator sets forth facts alleging that Defendants purposefully and systematically attempted to preclude public disclosure of many of the facts underlying this action. Complaint, ¶¶ 124-132. It is the height of arrogance that Defendants should now come before this Court seeking invocation of the public disclosure bar.

Defendants contend that the instant action is illegitimate and parasitic suggesting that Relator is an opportunist who merely read the newspaper and filed his complaint.  Memorandum, 17. Yet, no citizen who merely read any newspaper could have an inkling of the lies told to HUD to obtain money because, even if the true housing policies of the Defendants were disclosed in their entirety in newspapers (which they were not) the contrasting public record of actual submissions to HUD was blocked by Defendants. The very promise to HUD to provide public disclosure as a condition of obtaining money is elemental to the many false claims of Defendants.

Even as the existence of this lawsuit became public knowledge a local television reporter visited the Woonsocket Public Library where the city's submissions

17

to HUD were alleged to be housed for public review.   The reporter was told that no such volumes could be found.

## VI.     RELATOR HAS MET HIS BURDEN UNDER FRCP 9(b).

Relator's complaint is replete with detail regarding the specific false statements made to HUD for the purpose of obtaining federal funding.   These are contained in a section of the complaint entitled "The False Statements of Defendants to HUD".   Complaint, ¶¶ 47-57.   These specific averments cite to specific documents, dates and pages within those documents.

This would be sufficient but there is more.   The complaint specifically outlines the truth as contrasted with the referenced submissions to HUD in a section entitled "The True Policies and Practices of Defendants".   Complaint, ¶¶ 58-132.   This section provides specific instances, dates, persons and entities involved.     The complaint further provides detail about the federal programs implicated and the relationship of the false statements made to the requirements of those programs. Complaint, ¶¶ 15-20.   The roles of each Defendant are identified and specified. Complaint, ¶¶ 9-15.   The amount of money obtained illegally from the government is stated.   Complaint, ¶¶ 137, 143.

In total, the complaint identifies the times, dates, places and identities" so as to give Defendants sufficient notice so as to allow Defendants to defend themselves.

However, if there is any deficiency in the detail of the pleading before the Court it results from the difficulty in obtaining information controlled by the Defendants themselves.

> …we have said that Rule 9(b) pleading standards may be relaxed, in an appropriate case, "when the opposing party is the only practical source for discovering the specific facts supporting a pleader's conclusion." Boston & Maine Corp. v. Hampton, 987 F.2d 855, 866 (1st Cir. 1993). In such cases, "even for a plaintiff's allegations of fraud, if the facts would be peculiarly within the defendants' control, a court may allow some discovery before requiring that plaintiff plead individual acts of fraud with particularity." Id. (citation and internal quotation marks omitted).
>
> <u>United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 229-233 (1st Cir. 2004)</u>

At bar, the facts are not only within the scope of control of Defendants but those same Defendants have taken affirmative steps to prevent disclosure of those facts.  <u>Complaint, ¶¶ 124-132.</u>   That Relator has been able to provide particularity he has is remarkable in light of the conduct of Defendants.

It is disingenuous for Defendants to come before this Court claiming lack of particularity in light of the affirmative efforts to block public disclosure of their conduct. They ought not be rewarded for thwarting the public disclosure requirements of the very federal programs they have cheated.

### *<u>Conclusion</u>*

For all of the reasons cited herein, the Court should deny Defendants' motions.

### *<u>Request for Oral Argument</u>*

Relator joins in Defendants' request for oral argument on the pending motion.

Respectfully Submitted,

**Government of the United States**
*ex rel.* **Gordon F.B. Ondis**

BY HIS ATTORNEY

/s/ Leon A. Blais
_____
Leon A. Blais  (BBO#652595)

BLAIS PARENT & QUINN
20 Cabot Blvd
Suite 300
Mansfield, MA 02048
508 618-1280
617 812-0459 fax
LBlais@BlaisParent.com

**Certificate of Service**

The undersigned counsel hereby certifies that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.   All counsel of records are such registered participants.

Dated:  June 2, 2006                             /s/ Leon A. Blais