UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* GORDON F.B. ONDIS, Plaintiff, | ) ) ) ) ) | |
| v. | ) ) | CIVIL NO. 05-10312-MLW |
| CITY OF WOONSOCKET, RHODE ISLAND; SUSAN D. MENARD, in her individual capacity and in her capacity as Mayor of the City of Woonsocket, Rhode Island; JOEL D. MATHEWS, in his individual capacity and in his capacity as Director of Planning and Community Development of the City of Woonsocket, Rhode Island; PAULETTE MILLER, in her individual capacity and in her capacity as Assistant Director of Planning and Community Development of the City of Woonsocket; OWEN T. BEBEAU, in his individual capacity and in his capacity as Director of Human Services of the City of Woonsocket, Rhode Island; MICHAEL ANNARUMMO, in his individual capacity and in his capacity as Director of Administration and Director of Public Works of the City of Woonsocket, Rhode Island; Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

**DEFENDANTS' REPLY TO RELATOR'S OPPOSITION AND
OBJECTION TO DEFENDANTS' MOTION TO DISMISS**

**I. Introduction**

Relator's Opposition and Objection to Defendants' Motion to Dismiss ("Opposition") confirms that Relator's Complaint should be dismissed. Relator's allegations fall measurably below the most lax pleading requirements, even though he is obligated to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b). Relator has not alleged even the most rudimentary

components of a viable False Claims Act count, such as what *specific* statement Relator alleges was false or *why* the statement was false. Relator's Complaint suffers from numerous other defects as well, including a failure to adequately allege why any of the Defendants could be liable in their individual capacities, or how a supposed conspiracy to violate the FCA existed among them.

In his Opposition, Relator largely ignores those deficiencies and most of the legal authority that Defendants have cited in support of their Motion to Dismiss. Relator baldly and incorrectly asserts both that his disconnected and conclusory allegations are actually not disconnected and conclusory, and that such allegations are sufficient to support his claims, despite all of the authority to the contrary. Relator also relies on arguments that are simply irrelevant to the pending motion and to the pleading requirements of his claims.[1] Therefore, for the reasons set forth in Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defendants' Memo.") and in this Reply, Defendants submit that the Court should dismiss Relator's Complaint in its entirety.

## II. Argument

### A. Relator makes no argument that he has standing to bring common law claims on behalf of the United States.

Relator's Opposition entirely ignores his lack of standing to bring common law claims on behalf of the United States given the Government's decision not to intervene in this case. See Defendants' Memo. at 4-5. Because Relator provides no basis, in either his Opposition or his Complaint, to support standing for the common law claims, Counts Three and Four of the

---

[1] Relator begins his Opposition with the assertion that the First Circuit has cautioned against applying the statutory bar of § 3730(e)(3) to *qui tam* litigation such as this case. See Opposition at 2 (quoting United States ex rel. S. Prawer & Co. v. Fleet Bank, 24 F.3d 320, 328 (1st Cir. 1994)). Section 3730(e)(3), however, is entirely irrelevant to this case and to any argument Defendants have raised. See § 3730(e)(3) (prohibiting claims "based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party").

Complaint should be dismissed.  Id.

**B.    Relator again fails to provide any legal or factual basis for liability of the Individual Defendants in their individual capacities.**

Relator again provides no basis for the liability of Defendants Menard, Matthews, Miller, Bebeau, or Annarummo ("Individual Defendants") in their individual capacities.  Relator cites no authority that specifically supports his argument that he does not need to allege any basis for such liability.[2]  Instead, Relator simply argues that he does not have to allege any basis for individual capacity liability because the First Circuit has not yet addressed the issue, even though apparently each court that has addressed the issue has upheld this requirement.  See Defendants' Memo. at 5-6.[3]

The requirement of specifically pleading individual capacity liability in this case is appropriate because of the heightened pleading requirements of Rule 9(b) that apply to FCA claims.  As the First Circuit has noted in a different context, the distinction between individual and official capacity "is a distinction that portends a meaningful difference."  McCarthy v. Azure, 22 F.3d 351, 360 (1st Cir. 1994); see also id. (noting that the distinction between individual and official capacities can be found "across the law" and citing cases).  This distinction "is a reflection of the reality that individuals … frequently act on behalf of other parties—a reality that often makes it unfair to credit or blame the actor, *individually*, for such acts."  Id. (emphasis added). The application of Rule 9(b) to the FCA is intended, in part, to "protect[] a defendant from harm to his reputation or goodwill" exactly because it is too easy, as in this case, to lump defendants together in an alleged fraudulent scheme.  See United States ex

---

[2] Relator cites only one case in support of his position that has nothing to do, even tangentially, with individual capacity liability.  See Opposition at 4-5 (quoting United States v. President & Fellows of Harvard College, 323 F. Supp. 2d 151, 186-87 (D. Mass. 2004)).

[3]  Relator's argument is particularly inappropriate given that, elsewhere in his Opposition, he celebrates providing "the only applicable, although not controlling, law on the subject" at issue.  See Opposition at 12.

3

rel. Branigan v. Bassett Healthcare Network, 234 F.R.D. 41, 44 (N.D.N.Y. 2005) (citation omitted); see also United States ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1257 (D.C. Cir. 2004) (complaint that failed specifically to plead roles in FCA violation "subjected the named individuals to vague, potentially damaging accusations of fraud"); Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (purposes of Rule 9(b) applied to FCA are, in part, "to protect defendants from frivolous suits" and to "protect[] defendants from harm to their goodwill and reputation").

Therefore, if Relator seeks to hold the Individual Defendants liable in their individual capacities for any alleged FCA violation, he must specifically allege a basis for such liability. See Defendants' Memo. at 5-6.[4] Because he has not done so, the Court should dismiss Counts One and Two against each of the Individual Defendants in his or her individual capacity.

**C.    Relator still tries to hide his failure to plead with the requisite specificity beneath a pile of disconnected and conclusory allegations.**

Relator defends the lack of requisite specificity in his Complaint by digging deeper into his pile of disconnected and conclusory allegations. In doing so, Relator attempts to distract the Court with a wealth of irrelevance: in particular, Relator seems to believe that he can satisfy Rule 9(b) with the quantity, if not the requisite specificity, of his allegations. See, e.g., Opposition at 8 n.2 ("Defendants acknowledge Relator's pleading of these seventy (70) individual statements"); id. at 10 ("Defendant Menard's name is referenced twenty-six (26) times in the complaint"); id. at 14 ("hundreds of facts averred in the complaint").[5] Yet, Rule 9(b) as applied

---

[4] Based on his discussion of United States ex rel. Wilson v. Graham County Soil & Water Conversation Dist., 224 F. Supp. 2d 1042, 1049-50 (D.N.C. 2002), Relator seems to argue that it is enough for him simply to include the name of each Defendant somewhere in "the factual allegations of the complaint." See Opposition at 4 (quoting Wilson). That is not the holding of Wilson, the applicable standard under Rule 9(b), or enough to save Relator's conclusory allegations of FCA liability.

[5] Relator's adopts the same "kitchen sink" approach to the arguments in his Opposition as he does to the allegations in his Complaint. Thus, he argues both that Defendants' Memo. provides too much information, see Opposition at

to the FCA requires more than simply mentioning a Defendant's name a sufficient number of times, or listing a sufficient number of alleged statements by a Defendant:

> Underlying schemes and other wrongful activities that result in the submission of fraudulent claims are included in the "circumstances constituting fraud or mistake" that must be pled with particularity pursuant to Rule 9(b). *However, such pleadings invariably are inadequate unless they are linked to allegations, stated with particularity,* of the actual false claims submitted to the government that constitute the essential element of an FCA claim.

United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 232 (1st Cir. 2004) (emphasis added). Without the specificity required by Rule 9(b), Relator's pile of disconnected allegations fails to provide a basis for FCA liability.

   1.     **Relator's twenty-page list of quotations is insufficient to meet the pleading requirements of Rule 9(b).**

First, Relator argues incorrectly that he does not need to identify any specific false claim, but instead may rely generally on his twenty-page list of alleged excerpts from the City's submissions to HUD.[6] Relator asserts that his broad allegations, "repeated again and again" in the Complaint, that Defendant City was implementing a secret "true" public policy that generally contravened these alleged statements to HUD satisfy the requirements of Rule 9(b). See Opposition at 7; see also, e.g., Complaint ¶ 32. Yet, Relator nowhere identifies specifically what, among these seventy alleged excerpts, constituted a false claim. See Williams, 389 F.3d at 1257 (requiring pleading with specificity of the "fact misrepresented"). Even under Relator's reading of the term "claim," Relator nowhere points to a specific claim and alleges specifically

---

2-3 (criticizing inclusion of facts concerning personal jurisdiction), and too little, see Opposition at 5 n.1 (criticizing omission of facts concerning actual claims process). As discussed in Defendants' Memo., Defendants have provided information of which the Court may appropriately take judicial notice on a motion to dismiss, see Defendants' Memo. at 14 n.8 (citing Greene v. Rhode Island, 398 F.3d 45, 48 (1st Cir. 2005)), and referred to the allegations in Relator's own Complaint, see Defendants' Memo. at 3 (citing Complaint ¶¶ 8, 120).

[6] Relator cites Karvelas in support of his argument that he need not allege any actual specific false claim for payment. See Relator's Opposition at 5-6. In Karvelas, the First Circuit clearly held that pleading an FCA claim under Rule 9(b) requires pleadings "linked to allegations, stated with particularity, of the actual false claims submitted to the government that constitute the essential element of an FCA *qui tam* action." 360 F.3d at 232.

5

how that claim was false.  Cf. Opposition at 7 (quoting Complaint ¶¶ 32, 33).

In <u>United States ex rel. Garst v. Lockheed-Martin Corp.</u>, No. 98 C 5072, 2002 WL 1794004 (N.D. Ill. 2002), <u>aff'd</u>, 328 F.3d 374 (7th Cir. 2003), the district court confronted a similarly deficient complaint.  The court held that relator's complaint, although it was lengthy and contained a significant amount of information, failed to satisfy the requirements of Rule 9(b).  <u>Id.</u> at *2-3; <u>see also</u> <u>id.</u> at *2 (describing relator's technique as "shotgun pleading").  In particular, the court held that the complaint lacked the requisite specificity because it

> fails to connect allegedly false statements to specific claims for payment, and it does not state intelligibly *why* each particular claim or statement is false….
> [R]elator offers reasons why he believes *all* of the listed claims are false, rather than explaining why each specific claim is false ….

<u>Id.</u> at *3; <u>see also</u> <u>United States ex rel. Goldstein v. Fabricare Draperies, Inc.</u>, 236 F. Supp. 2d 506, 507-08 (D. Md. 2002), <u>aff'd</u>, 84 Fed. Appx. 341 (4th Cir. 2004) (complaint failed Rule 9(b) because "specificity" it provided was "illusory" and complaint merely contained a "conclusory allegation that matters the defendants represented" in relevant documents were false without identifying "each and every specific misrepresentation" defendants allegedly made).  As in <u>Garst</u>, Relator in this case, despite his lengthy and quotation-filled Complaint, never explains specifically how any particular individual statement allegedly made to HUD was false, nor connects any particular claim specifically to the events that prove it to be false.

Relator also nowhere identifies specifically the role of each Defendant in the fraud alleged, as Rule 9(b) requires.  See <u>DiVittorio v. Equidyne Extractive Indus., Inc.</u>, 822 F.2d 1242, 1247 (2d Cir. 1987).  Relator asserts essentially that he has met the requirements of Rule 9(b) as to each of the Individual Defendants because he at least identified the job title and, as to most if not every one of the Individual Defendants, provided a job description for that Defendant's position with the City.  <u>Compare</u> Opposition at 18 ("The roles of each Defendant are

6

identified and specified.  Complaint, ¶¶ 9-15.") with Complaint ¶ 13 ("Defendant Owen Bebeau is Director of Human Services for Defendant City of Woonsocket.").  Such allegations, which are unrelated to any specific alleged fraud, are insufficient to establish the liability of the Individual Defendants in any capacity (just as merely mentioning the name of a defendant somewhere in the factual allegations of the Complaint is insufficient to establish that defendant's individual capacity liability, see supra).  Moreover, even where Defendants are mentioned elsewhere in the Complaint, Relator fails to specify their connections to any specifically alleged false claims.  See, e.g., Complaint ¶¶ 68-74 (describing alleged memorandum by Defendant Bebeau without identifying Defendant Bebeau's specific connection to any false claim); see also United States ex rel. Sanders v. E. Ala. Healthcare Auth., 953 F. Supp. 1404, 1414 (M.D. Ala. 1996) (complaint insufficient under FCA because it "does not tie [defendants'] acts to the submission of false claims or another activity prohibited by" the FCA).

      Relator attempts to defend his lack of specificity by stating that the evidence of Defendants' alleged secret fraudulent scheme, which will provide such specificity, is in Defendants' control.  See Opposition at 18-19.  In other words, Relator hides behind the conclusory conspiracy theory of his Complaint, which he has failed to allege with sufficient specificity in the first place.  See infra.  The First Circuit, however, in the very case cited by Relator on this point, has held that a "a *qui tam* relator may not present general allegations in lieu of details of actual false claims in the hope that such details will emerge through subsequent discovery."  Karvelas, 360 F.3d at 231 (also noting courts' concerns that, without requiring FCA pleading specificity despite defendants' alleged control of information, "a *qui tam* plaintiff, who has suffered no injury in fact, may be particularly likely to file suit as a pretext" (citation omitted)).  Relator cannot overcome the deficiencies in his own Complaint by pointing his finger

at the Defendants. Allowing him to do so would only compound the very harm that the application of Rule 9(b) to the FCA is intended to prevent. See Harrison, 176 F.3d at 784 (Rule 9(b) applied to FCA to eliminate "actions in which all the facts are learned after discovery"); Williams, 389 F.3d at 1257 (Rule 9(b) applied to FCA to "safeguards potential defendants from accusations of moral turpitude" and "guarantee[s] all defendants sufficient information" to respond to allegations (citation omitted)).

       **2.**     **Relator ignores the requirement that a conspiracy under the FCA must be pled with specificity.**

Relator's Opposition simply ignores the *pleading* requirements for alleging a conspiracy under the FCA. See Defendants' Memo. at 11-12. Instead, Relator cites authority regarding the elements that he must prove to succeed generally on a conspiracy claim. See Opposition at 9. Nor does Relator even meet the incorrectly low pleading standard that he sets for himself. See id. Instead, he returns again to the Individual Defendants' job titles as sufficient bases for establishing that each was part of a conspiracy to defraud the government in violation of the FCA. Compare Opposition at 10 ("The complaint specifically lays out the roles of the individual Defendants on implementation of the overall scheme. Complaint, ¶¶ 9-13.") with Complaint ¶ 13 ("Defendant Owen Bebeau is Director of Human Services for Defendant City of Woonsocket.").

In doing so, Relator simply emphasizes that his Complaint fails to "specify the particulars of how and when the alleged conspiracy arose, who entered into it, or what act was committed in furtherance of the conspiracy," as required for pleading an FCA conspiracy claim under Rule 9(b). United States ex rel. Capella v. Norden Sys., Inc., No. 3:94-CV-2063 (EBB), 2000 WL 1336487, at *11 (D. Conn. 2000); see also United States ex rel. Johnson v. Shell Oil Co., 183 F.R.D. 204, 208 (E.D. Tex. 1998) (requiring pleading with particularity of the "what, when,

where, and how" of a conspiracy alleged under the FCA); Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005) (FCA conspiracy allegation failed Rule 9(b) requirement because "bare legal conclusion" was "unsupported by specific allegations of any agreement or overt act"). Relator does not need "to allege each and every inference and evidentiary nuance" necessary to prove a conspiracy. See Opposition at 10. However, he also cannot rely, as he does, on a conclusory assertion that "all of the … allegations within the complaint attribute proscribed conduct to all of the Defendants acting jointly." See id.; see also Complaint ¶ 141 (conclusory allegation that Defendants "did willfully and intentionally conspire" to violate the FCA). Consequently, Count Three should be dismissed.

**D.    Relator fails to meet his burden for asserting subject matter jurisdiction in this Court under the public disclosure/original source rule.**

Relator's Opposition fails to save the conclusory allegations in his Complaint that his claims are not based upon public disclosures and that he is an original source. As discussed in Defendants' Memo. (and not denied by Relator), Relator bears the burden of proof of subject matter jurisdiction and "may not rely on mere conclusory allegations" to support his claim of jurisdiction in this Court. Bannon v. Edgewater Med. Ctr., 406 F. Supp. 2d 907, 920 (N.D. Ill. 2005); see also United States ex rel. Hafter v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1162 (10th Cir. 1999) (establishing original source status requires alleging "specific facts—as opposed to mere conclusions"). Yet, in his Opposition as in his Complaint, Relator fails to meet his burden. See Opposition at 16 (citing Complaint ¶¶ 8, 21-30).

Contrary to Relator's assertions, Defendants have shown that Relator's allegations are based upon public disclosures. See Defendants' Memo. at 12-17. Relator's response is that not *every* event that allegedly evidences Defendants' secret "true" policy was the subject of

9

newspaper reports.  See Opposition at 14-15.[7]  This might be relevant if Relator had provided in the Complaint the specificity required under Rule 9(b) and had actually linked each of these alleged events to specific false claims.  Under the theory of Relator's Complaint, however, the nondisclosure of a particular event is irrelevant because Relator's Complaint is directed not at the events, individually, but at the alleged secret "true" policy that Relator contends the events prove.

The "critical elements" of Defendants' alleged secret "true" policy, as outlined by Relator, were clearly a matter of public record.  See Bannon, 406 F. Supp. at 920; Defendants' Memo. at 14-15.  Relator's Complaint adds nothing relevant to the newspaper accounts of the events that Realtor alleges prove the existence of the alleged secret "true" policy.  See Defendants' Memo. at 14-15.  Moreover, contrary to Relator's assertions, Defendants have shown that the allegedly "false statements made to the government" were publicly disclosed because they were provided directly to HUD.  Compare Opposition at 14 with Defendants' Memo. at 13-14; see also United States v. Bank of Farmington, 166 F.3d 853, 861 (7th Cir. 1999) (disclosure made to public official "who has managerial responsibility for the very claims being made" constitutes public disclosure under FCA); United States ex rel. Coleman v. State, No. IP06-0714-C-T/G, 2000 WL 1357791, at *11 (S.D. Ind. 2000) (disclosure of information on which action was based in plans submitted to agency which approved them constituted public disclosure).  Indeed, in contrast to Relator's assertion, the true "irony" of this issue is that Relator alleges both that Defendants for ten years pursued a *secret* policy, and that the proof of this policy is a list of events that were reported in published newspaper accounts.  See Opposition at

---

[7] Apparently, it does not matter to Relator that almost every event at issue was reported in the newspaper.  Compare Opposition at 14-15 with Defendants' Memo. at 14-15.  Also, Relator does not contest that the so-called "X + Y = Z" formula provides the appropriate public disclosure analysis for purposes of determining subject matter jurisdiction.  See Opposition at 14; Defendants' Memo. at 13.

17.

Relator's apparent last hope of subject matter jurisdiction is based on his contention that he "was in a unique position to understand the significance" of the publicly disclosed events that allegedly indicate Defendants' secret "true" policy, and therefore he was an original source. See Opposition at 15. That Relator's "background knowledge enabled [him] to understand the significance of the information" in the public disclosures is insufficient to make him an original source. United States ex rel. Kreindler & Kreindler v. United Techs. Corp., 985 F.2d 1148, 1159 (2d Cir. 1993). Likewise, Relator's contention that he "commission[ed] further investigation" into Defendants' alleged secret "true" policy fails the original source test. See Defendants' Memo. at 16; Kreindler, 985 F.2d at 1159 ("collateral research and investigations" insufficient); United States ex rel. Barth v. Ridgedale Elec., Inc., 44 F.3d 699, 703 (8th Cir. 1995) (same).[8]

Relator bristles at the suggestion that he "is not an 'inside whistleblower'" of the kind for whom the FCA *qui tam* provisions were intended. See Opposition at 3; United States ex rel. O'Keefe v. Sverdup Corp., 131 F. Supp. 2d 87, 93 (D. Mass. 2001) (distinguishing "inside whistleblower" under FCA from "gadfly outsider"). However, Relator concedes that he is a private developer (Opposition at 2), who is not employed by the City or HUD. Moreover, Relator provides no basis for this Court to find that he meets the requirements of the public disclosure / original source rule, which were "designed to preclude *qui tam* suits based on information that would have been equally available to strangers to the fraud transaction[,] had they chosen to look for it[,] as it was to the relator." See United States ex rel. Alcohol Found.,

---

[8] Relator asserts that his allegations of being an original source are "not merely conclusory." See Opposition at 16 (citing Complaint ¶¶ 8, 21-30). Most of the allegations he cites to make his point, however, concern only one of the events alleged in the Complaint. See Complaint ¶¶ 21-30. Relator provides no specific allegations as to how he became aware of most of the other events alleged in the Complaint—including, in particular, those that were clearly reported in the newspaper. Indeed, it is unclear whether his "investigation" of those events involved anything more than reading published newspaper reports. See Defendants' Memo. at 14-15 (comparing events alleged to newspaper reports).

Inc. v. Kalmanovitz Charitable Found., Inc., 186 F. Supp. 2d 458, 462 (S.D.N.Y. 2002). Relator has not met his burden in asserting subject matter jurisdiction in this Court and, therefore, the Court should dismiss the Complaint.

### III.  Conclusion

Based on the foregoing, Defendants again submit that the Court should dismiss the Complaint in its entirety.

Respectfully Submitted,
**CITY OF WOONSOCKET, RHODE ISLAND; SUSAN D. MENARD; JOEL D. MATHEWS; PAULETTE MILLER; OWEN T. BEBEAU; and MICHAEL ANNARUMMO**
By their Attorneys,

/s/  Michael B. Galvin
Thomas E. Dwyer (BBO No. 139660)
Michael B. Galvin (BBO No. 630515)
Justin P. O'Brien (BBO No. 658765)
**DWYER & COLLORA, LLP**
600 Atlantic Ave.
Boston, MA 02210-2211
(617) 371-1000
 mgalvin@dwyercollora.com

**SUSAN D. MENARD, in her individual capacity,**
By her Attorney,

/s/  Howard R. Croll
Howard R. Croll (BBO No. 105380)
**FONTAINE & CROLL, LTD**.
34 Hamlet Avenue
Woonsocket, RI 02895
(401) 765-0200

Dated:  August 11, 2006

### CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on August 11, 2006.

/s/  Michael B. Galvin

Dated:  August 11, 2006