UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* GORDON F.B. ONDIS<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF WOONSOCKET, RHODE ISLAND; SUSAN D. MENARD, in her individual capacity and in her capacity as Mayor of the City of Woonsocket, Rhode Island; JOEL D. MATHEWS, in his individual capacity and in his capacity as Director of Planning and Community Development of the City of Woonsocket, Rhode Island; PAULETTE MILLER, in her individual capacity and in her capacity as Assistant Director of Planning and Community Development of the City of Woonsocket, Rhode Island; OWEN T. BEBEAU, in his individual capacity and in his capacity as Director of Human Services of the City of Woonsocket, Rhode Island; and MICHAEL ANNARUMMO, in his individual capacity and in his capacity as Director of Administration and Director of Public Works of the City of Woonsocket, Rhode Island;<br><br>Defendants. | CIVIL NO. 05-10312-MLW |

**RELATOR'S SUR-REPLY MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

      Relator herewith files his Sur-Reply Memorandum of Law in Opposition to Defendants' Motion to Dismiss and argues as follows:

1

**I.   THE INDIVIDUAL DEFENDANTS CONTINUE TO TRY TO EVADE RESPONSIBILITY FOR THE FALSE CLAIMS COMPLAINED OF BY TRYING TO IMPOSE A PLEADING STANDARD THAT DOES NOT EXIST IN THE FIRST CIRCUIT.**

Defendants acknowledge that there is no applicable law in the First Circuit that would require that the Individual Defendants be excused from this litigation at this early stage.  Reply Memo., 3.

Rather, they direct to the Court to the only First Circuit case they are able to muster regarding the inherent difference between official and individual capacity.  Reply Memo., 3.  In so doing, however, Defendants fail to inform the Court of the complete holding of that case wherein the First Circuit found that whether liability for individual of official capacity is applicable is dependent on facts and not on pleading form—a holding anathema to the contention of Defendants.  "…whether a claim properly lies against a party in his personal capacity or in his official capacity is ultimately a function of the facts, not of pleading techniques alone." McCarthy v. Azure, 22 F.3d 351, 360 (1st Cir. 1994).

In their zeal to avoid personal responsibility, Individual Defendants cite to several out of circuit cases to suggest that Relator is required to plead roles of the Individual Defendants.  Defendants then employ a straw man defense by asserting that Relator has not done so and, thus, the Individual Defendants should be excused.  In so doing, Defendants deftly avoid a gaping flaw in their line of reasoning:  that Relator has, in fact, cited roles of the Individual Defendants.

> Defendant Mayor is chief executive officer of the City and, as such, is the signatory of all statements, assurances and certifications made for or on behalf of Defendant City, filed with HUD and referred to herein. Complaint, ¶ 10.

2

>Defendant Joel D. Mathews is Director of Planning and Community Development for Defendant City of Woonsocket. As such, he is responsible for submission of applications for federal community development assistance and for implementation of programs thereby funded. Complaint, ¶ 11.

>Defendant Paulette Miller is Assistant Director of Planning and Community Development for Defendant City of Woonsocket. She formerly held the title of Grants Administrator. As such, under the direction of Defendant Mathews, she is responsible for submission of applications for federal community development assistance and for implementation of programs thereby funded. Complaint, ¶ 12.

>In fact, simultaneous with offering to HUD the representations, statements, assurances and certifications required to obtain CDBG funds, Defendant City, through the efforts of Defendant Susan Menard (hereinafter "Mayor"), and supported by the City Council of Defendant City, has adopted an active, affirmative policy of blocking the development and reducing the amount of such affordable, subsidized housing and of harassing and intimidating the providers of such affordable, subsidized housing for the purpose of dissuading their continued participation in affordable, subsidized housing programs. Complaint, ¶ 5.

>Defendants' true policy was outlined on January 30, 2004 by, Woonsocket's Director of Human Services, Owen T. Bebeau in a report to the Woonsocket City Council. Owen Bebeau is an appointee of Defendant Mayor. Defendant Mayor is the immediate supervisor of Owen Bebeau. Mr. Bebeau is also the person who chauffeured Defendant Mayor to the HEDCO properties where she delivered her threats and harassed affordable housing provider HEDCO as referred to herein at ¶ 21 - ¶ 26. Complaint, ¶ 68.

In sum, Defendants seek to impose a pleading standard upon Relator which is grounded on not even a whit of applicable law. Their motion to dismiss the Individual Defendants from this litigation should be denied.

>**II. DEFENDANTS' CONTINUED PROTESTATIONS ABOUT ALLEGED FAILURE OF PARTICULARLITY FLY IN THE FACE OF THE OBVIOUS DETAIL CONTAINED WITHIN THE COMPLAINT.**

3

Defendants refuse to acknowledge the obvious fact that Relator's Complaint is filled with excruciating detail of specific false claims made by Defendants as part of applications for federal money.

Interestingly, Defendants do not contend that the statements attributed to them are true.   Rather, they would have this Court dismiss this action because, they contend, the documents submitted to the government were not themselves claims.  Defendants do not offer what they consider to be the actual claims they believe would have to be false for this action to succeed, but they would have the Court find that the many instances of false statements made to the government to obtain federal aid and cited in the Complaint have no significance.   The Defendants contend this lack of significance even in the face of statutory and regulatory requirements for such supporting certifications and statements to be truthfully made as a threshold condition for such federal funding.

That the Defendants do not acknowledge that statements and certifications made as a requirement for federal funds are themselves false claims, especially when physically attached to the document(s) seeking those funds, is befuddling.   The irony of these Defendants arguing lack of specificity in light of overwhelming citations to specific false statements linked to evidence of countervailing truth is inescapable.

Defendants have alleged that Relator's Complaint contains conclusory allegations.   They are correct.

Relator has concluded and alleged that these Defendants lied to the government to obtain money. But, more than just that Relator has supplied exquisite detail of what was falsely claimed to obtain money, when such claims were made, in

4

which specific documents the claims were made, who made such claims, the significance and materiality of such claims and evidence of the truth. It is hard to imagine how Relator could have provided more detail without being inside of the minds of Defendants themselves.

### III. DEFENDANTS' CONTENTION THAT RELATOR IS BARRED FROM BRINGING THIS ACTION BECAUSE OF PUBLIC DISCLOSURE IS ILLOGICAL AND WITHOUT BASIS.

Defendants contend that the false statements made to the government were publicly disclosed because they were made to the government. Reply Memo, 10.

In this example of contorted, Catch 22 logic no false claim action could be pursued because all false claims are made to the government and are, therefore, disclosed. This is absurd. If any Court adopted this view, the entire False Claims Act would be eviscerated.

Defendants misunderstand the cases surrounding disclosure to public officials as a basis of precluding FCA litigation. Such cases deal not with the fact of submission of the claim itself but, rather, with disclosure to public officials of information concerning the false nature of the claims. For example, the Seventh Circuit case cited by Defendants deals with disclosure to government officials of the substantive falsity of claims, not the mere filing of a claim itself. "Disclosure of information to a competent public official about an **alleged false claim** against the government we hold to be public disclosure within the meaning of § 3730(e)(4)(A) when the disclosure is made to one who has managerial responsibility for the very claims being made." United States v. Bank of Farmington, 166 F.3d 853, 861 (7th Cir. 1999) (emphasis added).

5

To read these cases in any other way simply makes no sense. Of course, the HUD officials had knowledge about the claims of Defendants. However, they certainly did not have knowledge of the falsity of those claims or they would have been statutorily precluded from awarding the requested federal aid to Defendant Woonsocket.

That these Defendants continue to contend that public disclosure should allow them to escape responsibility is remarkable in light of the lengths to which they went to successfully prevent public disclosure of their false statements until discovered by Relator. The Complaint details the measures employed by Defendants to that end. Complaint, ¶¶ 124-132.

On the other side of the equation, Defendants say this action is barred because some of the allegations in the Complaint were publicly disclosed. Reply Memo, 9-10. As previously argued, this has no significance if, as Relator contends, he is an original source. But, at least as important is the very simple logic that the significance of newspaper articles describing elements of the Defendant City's true view and policy regarding affordable housing were meaningless without knowledge of the specific false certifications and statements made to the federal government. And, as has been alleged, this crucial formulaic necessity was unavailable to the government or anyone else as a direct result of the conduct of Defendants until disclosed by Relator.

Indeed, application of the now famous (in FCA circles) $X + Y = Z$ formula for analysis of public disclosure leads to the inescapable conclusion that there has been no public disclosure at bar. "In Springfield Terminal Rwy., the Court of Appeals for the District of Columbia Circuit articulated a helpful and straightforward framework for applying the jurisdictional bar of § 3730(e)(4)(A). According to that framework, "if $X + Y = Z$, Z represents the allegation of fraud and X and Y represent its

6

essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed." 14 F.3d at 654 United States ex rel. O'Keeffe v. Sverdup Corp., 131 F. Supp. 2d 87, 94 (D. Mass. 2001)

In this case, there has been no allegation of fraud disclosed prior to this action and the crucial element of the fraud—what the government was told—has, in fact, been hidden by Defendants.   Under the rules of Springfield Terminal Defendants may not prevail.

### IV. THE ACTION AT BAR IS NOT "BASED UPON" PUBLIC DISCLOSURE AND, AS SUCH, THE COURT NEED TO REACH THE QUESTION OF WHETHER RELATOR IS AN ORIGINAL SOURCE.   BUT, NEVERTHELESS, HE IS.

"The Court reaches the original source question only if it finds the plaintiff's suit is based on information that has already been publicly disclosed. See United States ex rel. Barth v. Ridgedale Elec., Inc., 44 F.3d 699, 703 (8th Cir. 1995)",United States ex rel. O'Keeffe v. Sverdup Corp., 131 F. Supp. 2d 87, 93-94 (D. Mass. 2001)

Defendants continue to suggest that because Relator is not a city employee or HUD he cannot be an original source and that the fact that he commissioned additional investigation to supplement what he obviously already had determined was improper conduct disqualifies him as an original source.   The law, however, holds otherwise.  Defendants cite to a recent Massachusetts case but fail to draw the attention to that  Court's reference to allowance of allowance of original source status where a whistleblower commissioned a supporting investigation.  "…in another case which did not involve traditional insider information, a court held that a relator had

7

independent and direct information when he conducted an investigation and gleaned first hand information about public bus routes "readily available to government investigators."   See United States ex rel. Lamers v. City of Green Bay, 168 F.3d 1013, 1017 (7th Cir. 1999)". United States ex rel. O'Keeffe v. Sverdup Corp., 131 F. Supp. 2d 87, 93 (D. Mass. 2001)

The Kreindler case cited by Defendants (at 11) in their Reply Memorandum for the proposition that further investigation fails the original source test stands for no such thing.   Rather, the Kreindler court held that further investigation of a type undertaken in litigation did not in and of itself establish an original source.   The court made no finding about such investigation operating as a bar to original source status.   Additionally, that case is distinguishable because it dealt with a complaint drawn from allegations contained in previous litigation.   Here, there have been no previous allegations.   Relator understood the significance of the information he learned from his own background, experience and standing.

However, the Eighth Circuit case advanced by Defendants (Reply Memo., 11) in support of their contention that supplemental investigation affects status as an original source, in fact, supports Relator's status as an original source.   "'Direct' knowledge under the Act has been defined as knowledge "marked by absence of an intervening agency," United States ex rel. Springfield Terminal Ry. v. Quinn, 304 U.S. App. D.C. 347, 14 F.3d 645, 656 (D.C. Cir. 1994) (citing Prudential, 944 F.2d at 1160), or "unmediated by anything but [the plaintiff's] own labor." Wang, 975 F.2d at 1417. United States ex rel. Barth v. Ridgedale Elec., 44 F.3d 699, 703 (8th Cir. 1995)

At bar, there has been no intervening agency of any kind between Relator's discovery of the facts asserted and his report to the government resulting,

8

ultimately, in this action.  There has been no discussion by anybody of any false claims until such assertions were made by Relator.

Moreover, the substance of the false claims allegations at bar have been "unmediated" by anything but the Relator's own labor—as evidenced by his supplemental investigation aimed at substantiation and detailing of his own observations.

> V. **DEFENDANTS CONTINUE TO MISINTERPRET THE LAW OF CIVIL CONSPIRACY, OFFER NO CONTROLLING CASE LAW IN SUPPORT OF THEIR POSITION AND HAVE FAILED TO ADDRESS THE CONTROLLING DECISIONS CITED BY RELATOR IN HIS OPPOSING PAPERS.**

In his Opposition Memorandum Relator cited the Court to several controlling authorities in his contention that Defendants have misconstrued the law of conspiracy as applied in this case.  Relator's Opposition Memorandum, § III.

Defendants have made no attempt to address the law cited by Relator to support his contention that he has met his burden of pleading regarding civil conspiracy. Rather, Defendants have in the Reply Memorandum cited only to Connecticut and Texas lower court decisions and a non-controlling Eleventh Circuit holding.

Even in citing to the Eleventh Circuit case, Defendants have adopted the Court's statement of a proof requirement as a pleading requirement in this case.  "…the plaintiff must show "(1) that the defendant conspired with one or more persons to get a false or fraudulent claim paid by the United States; (2) that one or more of the conspirators performed any act to effect the object of the conspiracy; and (3) that the United States suffered damages as a result of the false or fraudulent claim." United States ex rel. Stinson v. Provident Life & Accident Ins. Co., 721 F. Supp. 1247, 1259

(S.D. Fla. 1989). Section 3729(a)(3) of the False Claims Act imposes liability on those who "conspire to defraud the government by getting a false or fraudulent claim allowed or paid." 31 U.S.C. § 3729  Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005).

Despite the sleight of hand of Defendants, Relator is not required to provide a litany of all evidence likely to be a product of discovery in his complaint. The pleading requirements demonstrated by Relator in his Opposition Memo have been met.

In summary, Relator acknowledges that Defendants are well within their rights to adopt public policy discouraging affordable housing within the City of Woonsocket, Rhode Island.  However, they are not entitled to obtain federal funding under programs that have as their primary purpose the provision of affordable housing while misleading the government as to the true policy objectives of Defendants. Defendants have, and Relator has explicitly described, the submission of pivotal false claims, statements and certifications that constitute fraud by commission.   Further, by failing to disclose their true policy intentions Defendants have defrauded the government by omission.   Had the truth been told, Defendants would not and could not have been successful in obtaining federal funding offered by HUD.

For all of the foregoing reasons, for those previously advanced and based upon argument at hearing, Relator urges the Court to deny Defendants Motion to Dismiss.

Respectfully Submitted,

**Government of the United States**
*ex rel*. **Gordon F.B. Ondis**

BY HIS ATTORNEY

/s/ Leon A. Blais
_____
Leon A. Blais  (BBO#652595)

BLAIS PARENT & QUINN
20 Cabot Blvd
Suite 300
Mansfield, MA 02048
508 618-1280
617 812-0459 fax
LBlais@BlaisParent.com

**Certificate of Service**

The undersigned counsel hereby certifies that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.   All counsel of record are such registered participants.

Dated:  August 29, 2006                                                      /s/ Leon A. Blais